490

## In re Anonymous No. 3 D.B. 89

Disciplinary Board Docket No. 3 D.B. 89.

KELLER, *Chairman,* June 11, 1991—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

### HISTORY OF PROCEEDINGS

Respondent was suspended from the practice of law in the Commonwealth of Pennsylvania by Supreme Court order dated January 9, 1989. The order was issued pursuant to Rule 214(d), Pa.R.D.E.

Respondent's suspension resulted from his August 1, 1988 conviction for possession with the intent to distribute cocaine, in violation of 21 U.S.C. §841(a)(1).

On October 18, 1988, respondent was sentenced to a ten-year period of incarceration, to be followed by a

special parole term of five years, and to pay $50 to the Crime Victims Fund maintained by the U.S. Treasury.

On March 2, 1990, respondent's sentence was reduced to a six-year period of incarceration, to be followed by a special parole term of five years and a $50 payment to the U.S. Treasury Crime Victims Fund.

Respondent is presently incarcerated at the Federal Correctional Institution in [    ].

On April 27, 1990, the Office of Disciplinary Counsel filed a petition for discipline of respondent based on his October 1988 conviction.

On June 7, 1990, respondent filed an answer to the petition, in which he admitted to the facts of his conviction and sentence and raised two new matters concerning the circumstances which led to his misconduct.

On August 21, 1990, respondent was deposed at the Federal Correctional Institution in [    ]. Both the Office of Disciplinary Counsel and respondent were represented by counsel.

The matter was referred to Hearing Committee [    ], which was chaired by [    ], Esq., and included [    ], Esq., and [    ], Esq. The committee held a hearing on the matter on October 16, 1990. The Hearing Committee filed its report on February 20, 1991, and recommended that respondent be suspended from the practice of law for a period of four years or until release from incarceration.

On November 26, 1990, the Office of Disciplinary Counsel filed a brief in response to the Hearing Committee report and urged that respondent be disbarred or the recipient of a lengthy suspension.

Respondent filed a brief on the matter and argued that a short suspension, followed by a probationary period, is the appropriate discipline to be imposed.

The matter was adjudicated at the April 10, 1991 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

We adopt the findings of fact made by the Hearing Committee, which are based upon the documentary and testamentary evidence presented by petitioner and respondent.

(1) Petitioner, whose principal office is located at 300 North Second Street, Harrisburg, Pa., is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforementioned Rules.

(2) Respondent, [    ], Esq., was born in 1956, admitted to practice law in the Commonwealth of Pennsylvania in 1983, and has a current address at Federal Correctional Institution, [    ].

(3) On January 9, 1989, the Supreme Court of Pennsylvania entered an order directing that, as a result of respondent's having been convicted in the U.S. District Court for the [    ] District of Pennsylvania of the offense of possession with the intent to distribute cocaine in violation of 21 U.S.C. §841(a)(1), respondent be immediately suspended from the bar of the Commonwealth pursuant to Rule 214(d), Pa.R.D.E., and that the matter be referred to the Disciplinary Board pursuant to Rule 214(f), Pa.R.D.E., for the institution of formal proceedings.

(4) On April 7, 1988, a 113-count indictment was filed in the U.S. District Court for the [ ] District of Pennsylvania at Criminal no. [ ].

(a) Respondent was one of 28 defendants named in the indictment.

(b) Count 1 charged respondent with conspiracy, in violation of 21 U.S.C. §846.

(c) Count 29 charged respondent with the possession with intent to distribute and distributing cocaine, a Schedule II narcotic, in violation of 21 U.S.C. §842(a)(1).

(5) On August 1, 1988, respondent entered a plea of guilty to Count 29 of the indictment.

(6) On October 18, 1988, respondent appeared before the Honorable [A] of the U.S. District Court for the [ ] District of Pennsylvania for sentence.

(a) Respondent was sentenced to a ten-year period of incarceration, to be followed by a special parole term of five years and respondent was ordered to pay the sum of $50 to be deposited into the Crime Victims Fund maintained by the U.S. Treasury.

(b) Upon oral motion of the government, Count 1 of the indictment was dismissed against respondent.

(7) On March 2, 1990, respondent appeared before the Honorable [A] of the U.S. District Court for the [ ] District of Pennsylvania for resentencing.

(8) Respondent's sentence was reduced to a six-year period of incarceration, to be followed by a special parole term of five years and respondent was ordered to pay the sum of $50 to be deposited into the Crime Victims Fund maintained by the U.S. Treasury.

(9) The respondent used drugs while in law school.

(10) The respondent continued to use drugs after being admitted to the practice of law.

(11)  The respondent's father committed suicide when the respondent was 17 or 18 years of age.

(12)  Respondent's brother-in-law committed suicide during respondent's first semester in law school.

(13)  During the second semester of his first year in law school the respondent's cousin, who had inspired him to go to college, committed suicide.

(14)  During the three years he was in law school respondent continued to use drugs and alcohol.

(15)  On January 6, 1986, the respondent did deliver 3.1 grams of cocaine, which eventually resulted in his arrest in April 1988.

(16)  After his arrest in April 1988, he continued to use drugs and alcohol.

(17)  In the summer of 1988 the respondent entered [    ] Rehabilitation Center.

(18)  The respondent completed the 28-day program recommended by [    ] Rehabilitation Center.

(19)  At the time the respondent entered [    ] Rehabilitation Center, he had a well established addiction to drugs and alcohol.

(20)  On October 18, 1988, shortly after his release from [    ] Rehabilitation Center, the respondent was sentenced to a term of imprisonment.

(21)  Respondent is currently incarcerated at the Federal Correctional Institute at [    ].

(22)  At the Federal Correctional Institute he has been involved in the Share Program, including lecturing in the program.

(23)  The Share Program is an orientation program for inmates to explain the drug programs available.

(24) At the Federal Correctional Institute the respondent has taught courses on alcoholism and cocaine awareness and attended AA meetings.

(25) Numerous members of the [ ] County Bar Association have written letters on respondent's behalf to the parole office and the Office of Disciplinary Counsel. All of these letters have attested to respondent's high moral character and the writers' confidence that he is capable of competently resuming the practice of law upon his discharge from prison.

## CONCLUSIONS OF LAW

(1) Respondent's October 18, 1988 conviction for violation of 21 U.S.C. §841(a)(1) is a conviction under Rule 214(d), Pa.R.D.E.

(2) Respondent's conviction constitutes a *per se* independent basis for discipline under Rule 203, Pa.R.D.E.

## DISCUSSION

Respondent's criminal conviction provides the grounds for discipline under the Pennsylvania Rules of Disciplinary Enforcement, Rule 203. The only issue before the Disciplinary Board is, therefore, the appropriate disciplinary sanction in light of respondent's criminal conviction.

It is incumbent upon the Disciplinary Board to "consider the events which surrounded the criminal charge in order 'to weigh the impact of the conviction upon the measure of discipline.'" *Office of Disciplinary Counsel v. Eilberg,* 497 Pa. 388, 441 A.2d 1193 (1982), quoting *Office of Disciplinary Counsel v. Troback,* 477 Pa. 318, 383 A.2d 952 (1978).

Respondent has acknowledged in his answer to the petition for discipline that the instant proceedings arose from his October 1988 conviction for possession of co-

caine with the intent to distribute the illegal drug. There is no question that respondent distributed the cocaine to his wife's cousin, a police informant, for personal reasons and without a profit motive. There is also no question that at the time these events transpired, respondent was a drug addict. Respondent provided a lengthy narrative, in his deposition, of the grueling toll his cocaine abuse had taken on his body. Respondent relayed to the Office of Disciplinary Counsel how, prior to his arrest, his substance abuse had caused him to "lose" an entire week and much of his body weight, and retreat into a hermit-like existence which revolved around drug use.

At the time respondent offered cocaine to his wife's cousin, he was still heavily involved in the abuse of drugs and alcohol. Against this backdrop he engaged in two foolish actions: the distribution of cocaine to another and the possession of an illegal substance. Respondent has accepted full responsibility for his actions and, like the Disciplinary Board, is of the opinion that a substance abuse problem does not in any way whatsoever excuse his reprehensible behavior.

However, according to Pennsylvania case law, the existence of psychiatric problems may mitigate attorney misconduct. In order for psychiatric infirmity to be considered in mitigation in a disciplinary proceeding, the respondent must establish the existence of a causal connection between the disorder and the attorney misconduct. *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989); see also *Office of Disciplinary Counsel v. [B],* No. 16 D.B. 88 (1989).

Respondent offered the testimony of renowned substance abuse experts [C], M.D., and [D], M.S.N., to explain the "baffling" nature of alcoholism and related addiction diseases. Respondent's two qualified experts attested to their treatment of respondent at a rehabilitation facility

shortly after his arrest, and rendered an opinion that respondent was indeed a person afflicted with these addictive diseases. Based on this expert testimony, which included some commentary on the cumulative effect of addictive diseases and the increasing lack of self-control they cause in the person, and respondent's own narrative, we conclude that he was indeed suffering from addiction at the time of his misconduct, and that this psychiatric disorder must be considered when we ascertain the appropriate discipline.

We will also take into account the many favorable letters about respondent's character which were submitted by numerous members of the bar. Various [ ] County attorneys wrote glowing testimonials about respondent's high character, and several offered him employment following his release from incarceration.

All of this evidence, and respondent's previously unblemished disciplinary record, leads us to the conclusion that the imposition of a lengthy term of suspension is the most appropriate form of discipline in this case. Respondent's long-term absence from the bar will both recognize the serious nature of the offense for which he is being disciplined and respect the interest of the public and the integrity of the bar. See *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 526 A.2d 1180 (1987).

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent [ ] be suspended from the practice of law for a period of five years, retroactive to the date of his suspension on October 18, 1988.

It is further recommended that the court direct respondent to pay the necessary expenses incurred in the in-

vestigation and prosecution of this matter pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Schiller, Gilbert and Paris dissent and would recommend disbarment.

Mr. Hill and Ms. Lieber did not participate in the adjudication.

## CONCURRING AND DISSENTING OPINION

SCHILLER, *Member,* June 11, 1991—I concur with the board in its conclusion of law. However, I disagree with the board's recommendation of a five-year suspension. I believe respondent should be disbarred retroactive to January 9, 1989, the date on which the Supreme Court of Pennsylvania placed respondent on interim suspension pursuant to Rule 214(d), Pa.R.D.E.

## DISCUSSION

This is another case of a public prosecutor or, in this case, a respondent about to be a public prosecutor, who was guilty of possession of cocaine with intent to deliver.

Respondent had a long and alarming history of drug and alcohol abuse predating his admission to the bar. One must wonder how such individuals could be screened in the future. Nevertheless, the respondent knew for years of his problems.

## CONCLUSION

I direct the attention of the board to the opinion of the Supreme Court in *Office of Disciplinary Counsel v. Simon,* 510 Pa. 312, 323, 507 A.2d 1215, 1221 (1986):

"The Code of Professional Responsibility embodies the standards for attorneys practicing law in this Commonwealth so that the public is protected and the integrity of the bar preserved. Respondent has flaunted those stand-

ards and violated the Code of Professional Responsibility. There is no excuse, justification or mitigation that can overcome the seriousness of the crime committed by respondent."

The above-cited case dealt with an attorney involved in the sale of cocaine. Likewise, I believe this language applies to the respondent in the instant matter. Respondent has flaunted the standards embodied in the Code of Professional Responsibility. At the time respondent engaged in the illegal sale of drugs, respondent was a month away from his starting day as an assistant district attorney. The Supreme Court in *Simon* also did not believe that the pressures of life faced by an attorney justifies the attorney's conduct of using or engaging in the sale of cocaine. The opinion specifically suggests that attorneys in those situations should attempt to deal with life's pressures by utilizing socially acceptable means, such as "Alcoholics Anonymous, individual psychotherapy, group therapy and reliance upon family and friends for additional support." *Id.* The respondent in this matter refused to participate in any of these activities at the time he engaged in his illegal conduct.

The dissent in *Simon* suggests that a per se rule of disbarment should not be adhered to. However, in view of the respondent's failure to get help over several years, the nature of the crime and respondent's impending work as a public prosecutor, disbarment is appropriate. It is indeed unfortunate that the board missed another opportunity to give a clear and convincing message to the bar that the use of illegal drugs, their sale, or involvement by attorneys in drug activities is a very serious matter. The integrity of the bar in the public's eye cannot continually be tarnished by drug use or involvement with illegal drugs by attorneys. The practice of law is a privilege in the Commonwealth of Pennsylvania and with it

goes awesome responsibilities. Members of the bar in general and future or present public prosecutors, in particular, must not be allowed to debase the integrity of the legal profession and erode public confidence.

Based on the foregoing, I respectfully dissent and recommend that the respondent be disbarred retroactive to January 9, 1989, the date on which the Supreme Court of Pennsylvania placed respondent on interim suspension pursuant to Rule 214(d), Pa.R.D.E.

Board Members Gilbert and Paris join in this concurring and dissenting opinion.

## ORDER

February 19, 1993—Rule to show cause entered by this court on February 20, 1992, is discharged. It is ordered that respondent be and he is suspended from the bar of this Commonwealth for a period of five years, retroactive to January 9, 1989, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Justice Larsen and Zappala did not participate in the consideration or decision of this matter.

Mr. Justice Papadakos files a dissenting statement.

## DISSENTING STATEMENT

PAPADAKOS, *J.,* February 19, 1993—I dissent from any sanction less than outright disbarment. My reading of recommendations favoring suspension reveals two interrelated analytical errors. First, there is a failure to distinguish between *use* and *distribution* of drugs. Second, there appears to be an unwillingness, at least in this case, to recognize our duty to the integrity of the legal profession.

The analysis of the Disciplinary Board, as well as the entire argument put forward by the respondent, is directed at the use of drugs and the psychological rehabilitative achievements of this particular lawyer. These are admirable considerations and, indeed, our law provides for mitigation in disciplinary proceedings where a psychiatric disorder, including addiction, is present. *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989). Nor am I unmindful of respondent's tragic personal history. If this case were limited to possession and use, I would have no difficulty in agreeing to a suspension. Under such circumstances, where there was no harm except to the user, suspension would be adequate under *Braun.*

Here, however, we are confronted with *distribution and sale* of cocaine as well. Distribution runs to a greater public harm, and I believe that it must engage the issue of protecting the "integrity of the legal system." *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). I conclude that distribution of cocaine is of such great dimension in casting shadows on the legal system itself that disbarment is required in order to vindicate the public's faith in the law. It is one thing to consider the plight of a lone user; it is an entirely different and much more serious matter to weigh the sanctions where the user intended to sell cocaine.