441 A.2d 1193

OFFICE OF DISCIPLINARY COUNSEL, Petitioner,

v.

**Joshua EILBERG.**

Supreme Court of Pennsylvania.

Argued Jan. 19, 1982.

Decided March 8, 1982.

John W. Herron, Asst. Disciplinary, Counsel, Philadelphia, for petitioner.

John Rogers Carroll, Philadelphia, for respondent.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

O'BRIEN, Chief Justice.

On February 24, 1979, respondent pleaded guilty to violating 18 U.S.C. § 203(a) which prohibits Members of Congress and other government officials from receiving compensation

for services rendered before any federal agency.[1] This Court entered an order suspending respondent from the practice of law on March 28, 1979, and referred the matter to the Disciplinary Board (hereinafter "Board") for the institution of formal proceedings to determine the extent of the final discipline to be imposed. A hearing was held on October 29, 1980, and November 14, 1980, with a report thereafter issued by the hearing committee on February 3, 1981. The committee concluded that respondent violated the following disciplinary rules:

1. DR 1–102(A)(6), dealing with conduct which adversely reflects upon an attorney's fitness to practice law;

2. DR 5–105(A), dealing with declining employment if an attorney's exercise of independent professional judgment on behalf of a client will be or is likely to be adversely affected or would involve the attorney in representing differing interests;

3. DR 5–105(B), dealing with the continuation of multiple employment if the exercise of an attorney's inde-

---

**1.** 18 U.S.C. § 203 states:

"Compensation to Members of Congress, officers, and others in matters affecting the Government.

(a) Whoever, otherwise than as provided by law for the proper discharge of official duties, directly or indirectly receives or agrees to receive, or asks, demands, solicits, or seeks, any compensation for any services rendered or to be rendered either by himself or another—

(1) at a time when he is a Member of Congress, Member of Congress elect, Delegate from the District of Columbia, Delegate Elect from the District of Columbia, Resident Commissioner, or Resident Commissioner Elect; or

(2) at a time when he is an officer or employee of the United States in the executive, legislative, or judicial branch of the Government, or in any agency of the United States, including the District of Columbia, in relation to any proceeding, application request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter in which the United States is a party or has a direct and substantial interest, before any department, agency, court-martial, officer, or any civil, military, or naval commission. . . .

\* \* \* \* \* \*

"Shall be fined not more than $10,000 or imprisoned for not more than two years, or both; and shall be incapable of holding any office of honor, trust, or profit under the United States."

pendent professional judgment on behalf of a client would be adversely affected by representation of the client or if it would likely involve him in representing differing interests; and

4. DR 8–101(A)(3), prohibiting a lawyer who holds public office from accepting anything of value from a person when the lawyer knows or it is obvious that the offer is for the purpose of influencing his action as a public official.

It was the recommendation of the hearing committee that respondent be suspended from the practice of law for a period of four years.[2] The Board concurred with the hearing committee that respondent's conviction constituted violations of the above-mentioned disciplinary rules. However, the Board recommended to this Court that respondent be suspended for a period of only three years retroactive to the date of the initial suspension, March 28, 1979. Following receipt of the Board's recommendation, this Court issued a Rule to Show Cause why respondent should not be disbarred on September 25, 1981, and heard oral argument in this matter on January 19, 1982.

The question presented to this Court is the extent of discipline to be imposed upon an attorney who pleaded guilty in federal court to a charge of unlawful receipt of compensation for representation of a client by his law firm before a federal agency. In light of respondent's conviction in federal court, we need not be concerned with the sufficiency of the evidence of the commission of that offense. Pa.R.D.E. 214 confirms that "[a] certificate of a conviction of an attorney for such a crime shall be conclusive evidence of the commission of that crime in any disciplinary proceeding instituted against the attorney based upon the conviction." *See Office of Disciplinary Counsel v. Troback*, 477 Pa. 318, 383 A.2d 952 (1978); *In re Gottesfeld*, 245 Pa. 314, 91 A. 494 (1914).

---

**2.** One member of the hearing committee filed a lengthy dissent, recommending that respondent receive no more than a public or private censure.

In spite of the fact that the certificate of conviction serves as conclusive evidence of respondent's guilt, it is our duty to consider the events which surrounded the criminal charge in order "to weigh the impact of the conviction upon the measure of discipline." *Office of Disciplinary Counsel v. Troback, supra* 477 Pa. at 320, 383 A.2d at 952. *Cf. In re Greenberg,* 457 Pa. 33, 318 A.2d 740 (1974). Thus, we will examine the incident to determine if any mitigating factors are present which would persuade us to temper the discipline to be imposed. However, we are not required to proffer respondent a second opportunity for an acquittal or ignore the fact that he entered a plea of guilty to this offense in federal court.

Respondent argues that the circumstances surrounding the offense to which he pleaded guilty do not evidence misconduct of such character as to warrant discipline more severe than that recommended by the Board, which in the case at bar was suspension for a period of three years. The standard of review vested in this Court in disciplinary matters is *de novo. Office of Disciplinary Counsel v. Campbell,* 463 Pa. 472, 345 A.2d 616 (1975). Although the Board's findings and recommendations are often persuasive, its conclusions are advisory only and are not binding upon us. *In the Matter of Leopold,* 469 Pa. 384, 366 A.2d 227 (1976). *Office of Disciplinary Counsel v. Walker,* 469 Pa. 432, 366 A.2d 563 (1976). In the instant case, our thorough review of the records leads us to agree with the Board that respondent's actions constituted violations of the aforementioned disciplinary rules. However, we are convinced that a lengthier suspension than the Board suggested is in order, and hence suspend respondent for a period of five years.

The evidence adduced at the hearings on October 29, 1980, and November 14, 1980, indicate the following facts which resulted in respondent's conviction. Respondent was elected to the United States House of Representatives in 1966. During his tenure as a Congressman, respondent simultaneously practiced law in a partnership with three other attorneys. Respondent was aware of the prohibition against

the receipt by a Congressman of compensation for representation of a client before a federal agency. Consequently, respondent's law firm established a dual practice by creating an additional entity comprised of respondent's three law partners. That law firm was to receive all fees from any federally-related compensation.

Prior to that time, respondent was approached by the administrative assistant to Rep. Daniel Flood and was asked if his firm would be interested in representing Hahnemann Hospital in Philadelphia. After several meetings with respondent and his firm, representatives from Hahnemann Hospital discharged its counsel and hired respondent's firm.

In the course of its representation, respondent's firm sought federal funding for the construction of an addition to the existing hospital. After numerous unsuccessful attempts to secure financing, Congressman Flood, as Chairman of the House Appropriations Sub-Committee on the Department of Labor and Health, Education, and Welfare, drafted legislation specifically granting Hahnemann Hospital a line item appropriation for $14,500,000. This legislation was signed into law on June 24, 1975, by President Gerald R. Ford, who designated the Community Services Administration (hereinafter "CSA") as the federal agency responsible for the release of the funds.

The CSA, apparently not fully satisfied with the overall financial feasibility of the construction project, had not released funds by March, 1976. Respondent request Congressman Flood to telephone President Ford's chief counsellor, John O. Marsh, Jr., to facilitate the release of the federal grant money. Congressman Flood contacted Marsh, and shortly thereafter, the money was received by Hahnemann Hospital.

The law firm composed of respondent's law partners subsequently received a check in the amount of $100,000 from Hahnemann Hospital. Within two weeks of depositing that sum, the firm issued a check to respondent for $34,900.

In his guilty plea, respondent conceded that he knowingly received income for services rendered by himself or another on a matter before a federal agency although prohibited by law to do so. However, respondent contends that a close examination of the accounts of the law firms reveal that only a small part of the $34,900 could be traced to the hospital matter. Most of the money represented funds owed to respondent by the companion firm for other legitimate legal services. In fact, respondent places the blame for his unlawful receipt of funds on an accounting error of the partner who was responsible for the distribution of funds and who normally omitted all funds generated by federal representation from respondent's share of the partnership draw.

Respondent asserts that his good faith effort to avoid receipt of prohibited compensation by establishing a dual practice law firm evinces an "ethic sensitivity" which militates against harsh disciplinary sanctions. Furthermore, respondent notes that he sought opinions from the Congressional Research Service in the Library of Congress on April 18, 1975, and November 15, 1976, concerning the legality of the activities for which he was later convicted. Respondent argues that these measures indicate the extent to which he endeavored to prevent any violation of § 203(a).

What respondent fails to mention is that both opinions from the Library of Congress strongly questioned the ethics of a "dual practice" arrangement, commenting that while such a device did not technically violate § 203(a), it bordered precariously near an appearance of a conflict of interest.

We need not now rule upon the ethics of a dual practice law firm. The fact that respondent proceeded to establish such an arrangement in the face of its dubious nature indicates to us at least an awareness on his part of the need for an abundance of caution in the administration of the firms. Yet respondent admittedly relinquished all control of the accounting procedures to his law partners. He stated at the hearing on October 29, 1980:

"I assumed that [respondent's law partners], together with the accountants, would take care of whatever bills and records, receipts, and expenditures that were involved. I did not make it a practice to all to look into those matters. I realize it was my responsibility, but it was purely a delegated one."

We cannot understand how respondent attempts to advance as a mitigating factor that his partner made an accounting error when respondent admitted at the hearing, "I received the checks. I should have known what the sources of the income were. That was my responsibility. I was a full partner." Respondent's attempt to lessen his guilt by asserting that someone else made an error is unconvincing. This argument bears a resemblance to the case where an associate under the employ of the attorney subject to discipline was the one who actually prepared false contingent fees for which the attorney was held responsible. Just as we held therein, respondent is not relieved of culpability because he may not have "dirtied his hands with the manual task." *In re Berlant Appeal*, 458 Pa. 439, 442, 328 A.2d 471, 474 (1974).

Respondent was fully aware of the federal prohibition enunciated by § 203(a). Nonetheless, he voluntarily engaged in the practice of law with a firm whose clientele required federal representation. In fact, respondent played a role in actively encouraging such clients to hire his firm for representation. In doing so, he walked a very narrow line between proper and improper conduct. The danger of receiving some federally prohibited funds was obvious, yet he completely delegated the responsibility to insure against that event to another attorney. The exact amount by which he benefitted is irrelevant to our imposition of discipline. Just as we do not discipline attorneys based on whether their schemes to defraud clients were successful or not, we are not now concerned with whether respondent received $100 or $34,900 in illicit funds. This Court has stated, "[i]n his high office the attorney-at-law is a minister of justice;

he ceases so to be when whether in the line of his professional work or outside of it, he prostitutes his knowledge of the law and the skill he has acquired therein to thwart the law." *In re Gottesfeld*, 245 Pa. 314, 317, 91 A. 494, 495 (1914). Respondent manipulated his office as a congressman and his position as an attorney in order to achieve a technical compliance with the law; by placing himself in a position vulnerable to error and mistake, he must now accept the penalty for any infraction of those rules.

This Court is well aware of the need to review the propriety of an attorney's continued professional involvement in the practice of law in disciplinary cases. Our concomitant duty is "to protect the public and preserve the public confidence in the legal profession and the judicial system." *Office of Disciplinary Counsel v. Lewis*, 493 Pa. 519, 527, 426 A.2d 1138, 1142 (1981), *citing, Matter of Leopold*, 469 Pa. 384, 394, 366 A.2d 227, 231–232 (1976); *Office of Disciplinary Counsel v. Grigsby*, 493 Pa. 194, 425 A.2d 730 (1981), *Office of Disciplinary Counsel v. Herman*, 493 Pa. 267, 426 A.2d 101 (1981). In seeking to preserve public confidence in the integrity of the legal profession, we must consider that respondent was not only an attorney, but an elected official, who by virtue of his office engaged in conduct which resulted in his conviction. The unique posture of respondent makes his offense a more serious one than a singular violation of the disciplinary rules by an individual attorney.

Our decision to suspend respondent rather than disbar him is based upon his significant contributions to his constituents while a public servant and the numerous distinguished character witnesses who testified to his good character, high repute, and fitness to practice law notwithstanding his conviction.

Respondent is hereby suspended from the practice of law for a period of five years, retroactive to the date of the original suspension, March 28, 1979.