**In re Anonymous No. 103 D.B. 89**

Disciplinary Docket No. 103 D.B. 89.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania,

POWELL, *Member,* February 26, 1991—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

The Pennsylvania Supreme Court issued an order on October 3, 1989, temporarily suspending respondent from the practice of law. The order was entered in accordance with Rule 214(d)(1), Pa.R.D.E., on the basis of respondent's October 27, 1988, conviction for violations of Title 18, U.S.C. §§1001 and 1014. As a result of his conviction, respondent was sentenced to three years probation and a $2,000 fine.

The Office of Disciplinary Counsel filed a petition for discipline of respondent on the basis of his conviction. The petition alleged that the conduct which led to respondent's criminal conviction violated four Disciplinary Rules.

On November 10, 1989, respondent filed an answer to the petition for discipline. Respondent admitted that he had been convicted and sentenced for his violations of Title 18, U.S.C. §§1001 and 1014, and that he had entered a voluntary plea of guilty in which he "acknowledged the truth of the stipulated facts contained within the agreement." However, respondent denied that his conduct violated any Disciplinary Rules.

On January 25, 1990, petitioner filed a memorandum of law on the matter, and requested that respondent be suspended from the practice of law for a period of five years.

A hearing on the matter was held on January 10 and 25, 1990, before Committee [    ], which was chaired by [   ]. Hearing Committee [   ] filed its report on November 5, 1990, and recommended that respondent be suspended from the practice of law for a period of three years, retroactive to the date of his temporary suspension.

The matter was adjudicated at the January 4, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

We make the following findings of fact, based on respondent's plea agreement with the U.S. attorney and his detailed testimony before Hearing Committee [   ].

(1) Petitioner, whose principal office is situated at Commerce Building, 300 North Second Street, 11th Floor, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of any attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of said Rules of Disciplinary Enforcement.

(2) Respondent, [   ], is a formerly admitted attorney in the Commonwealth of Pennsylvania, and he maintained a law office at [   ]. Respondent was born in 1947 and was admitted to practice law in the Commonwealth of Pennsylvania in 1972.

(3) On October 3, 1989, the Supreme Court of Pennsylvania entered an order directing that respondent be temporarily suspended from the practice of law and that, in accordance with the provisions of Rule 214 of the Pennsylvania Rules of Disciplinary Enforcement, the matter be referred to the Disciplinary Board for the institution of formal proceedings to determine the extent of final discipline to be imposed.

(4) Pursuant to the power granted by Rule 207(b)(2) and (3) of Pa.R.D.E., and in compliance with Rule 208(b)(1), Pa.R.D.E., petitioner filed against the respondent the following charge of misconduct in violation of the Pennsylvania Code of Professional Responsibility and the Pennsylvania Rules of Disciplinary Enforcement.

(5) On May 4, 1989, a criminal information was filed against respondent in the U.S. District Court for the [   ] District of Florida, charging respondent with one count of violating Title 18, U.S.C., §1001, and one count of violating Title 18, U.S.C., §1014. Both sections pertain to engaging in fraud and false statements.

(6) On the date of the filing of the information, a plea agreement, dated October 27, 1988, was filed with the court in which respondent agreed, inter alia, to enter a voluntary plea of guilty to the aforesaid two counts of the information and in which respondent acknowledged the truth of the stipulated facts contained within the agreement.

(7) Subsequent to the filing of the information and the plea agreement, respondent's plea of guilty to counts 1 and 2 of the information was entered before the court on June 6, 1989.

(8) As evidenced by the judgment dated September 22, 1989, respondent was convicted of the following offenses:

"False statements between October 31, 1983, and September 1984 in violation of Title 18, U.S.C., §1001 as charged in count 1. False statements on a loan application on May 24, 1984, in violation of Title 18, U.S.C., §1014 as charged in count 2."

(9) As further set forth in the aforesaid judgment, respondent's sentence includes, inter alia, three years probation and a $2,000 fine.

(10) Between October 31, 1983, and September 1984, respondent, through [A], began marketing time share units in a project known as [B] Resort. [A] told respondent that he, [A], involved himself in marketing the [B] project in order to assist [C] Bank.

(11) Respondent later became involved in marketing the [F] time share units through [A] as well.

(12) The thrust of respondent's sales effort, as the sales method was explained to him by [A], was as follows:

Prospective purchasers were advised by respondent that they could earn money by lending their credit, temporarily, by completing credit applications and submitting them to financial institutions. Respondent asked prospective purchasers to complete credit applications which he knew would be forwarded to financial institutions. [D] and [C] Bank were the financing institutions in connection with the [B] project. The [E] Savings and Loan Association was the financing institution utilized in connection with the [F] transactions.

(13) In each instance, as indicated, prospective purchasers were advised that respondent would pay the

purchaser in exchange for completing a credit application which would be submitted to a financial institution. The payments to purchasers were to be made by respondent only in the event the lending institution extended the requested loans. Prospective purchasers were also advised that the monthly payments required by the terms of the loans extended would be paid by the marketer. Purchaser-borrowers were also told that after a specified number of months, the purchaser had the option of either assuming the payment obligations or of quit-claiming the property to the developer, thus relieving the borrowers of their payment obligations. Respondent was aware that most borrowers were not interested in retaining the time share units purchased, but they agreed to submit completed credit applications only to obtain the mentioned cash payment.

(14) Respondent was also aware that the financial institutions mentioned were not apprised of the foregoing, that is, that the borrowers expected that they would have no liability to re-pay the debts which they incurred. The facts recited would have been important for the lending institutions to know in formulating their lending decisions.

(15) Individuals enlisted by respondent in the foregoing scheme include [G], listed in count two of the information.

(16) [C's] deposits were, at pertinent times, insured by the F.D.I.C. The accounts of [D] and of [E] Savings and Loan were insured by the F.S.L.I.C.

(17) Respondent also realized that the promised re-sales were illusory and were not likely to be made. He also understood that the financing institutions were being deceived because they were not aware of the side deal which had been made, which deal led the borrowers to believe they had no repayment obligations.

He understood that, in all likelihood, the financing institutions would suffer losses in connection with the loans extended. He also realized that the sales methodology outlined, including the [H] Associates Inc. guarantee of the end loans financed by [D] which he knew existed, was calculated to create the false impression that a troubled [C] Bank project had been solved through transactions financed by another institution. He embraced this scheme and participated in it knowingly and willfully, for the purpose of obtaining his sales commissions.

## CONCLUSIONS OF LAW

Respondent's aforementioned misconduct violated the following Disciplinary Rules:

(1) D.R. 1-102(A)(3)—prohibiting an attorney from engaging in illegal conduct involving moral turpitude;

(2) D.R. 1-102(A)(4)—prohibiting an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; and

(3) D.R. 1-102(A)(6)—prohibiting an attorney from engaging in conduct that adversely reflects on his fitness to practice law.

## DISCUSSION

Respondent's October 27, 1988, criminal conviction constitutes a basis for discipline under Rule 203(b)(1), Pa.R.D.E. It is the contention of the Office of Disciplinary Counsel that the conduct which led to respondent's conviction also violated four additional Disciplinary Rules. The Disciplinary Board will address the question of whether respondent violated the Disciplinary Rules alleged by petitioner, and then ascertain the appropriate discipline to be imposed.

The first Disciplinary Rule violation alleged in the petition for discipline is D.R. 1-102(A)(3), which proscribes attorney participation in "illegal conduct involving moral turpitude." In 1986, the Pennsylvania Supreme Court described moral turpitude as "anything done knowingly contrary to justice, honesty, principle or good morals." *Office of Disciplinary Counsel v. Simon*, 510 Pa. 312, 507 A.2d 1215 (1986).

The issue in the instant matter is whether respondent's admitted participation in two real estate schemes designed to defraud two banks of approximately $5.5 million is "anything done knowingly contrary to justice, honesty, principle or good morals." The answer to this question is obviously a resounding yes; the conscious participation in such an outrageous ploy is certainly in opposition to justice, honesty, principle and good morals. We therefore conclude that respondent's conduct violated D.R. 1-102(A)(3).

The petition for discipline also charged respondent with violating D.R. 1-102(A)(4), which prohibits engagement in dishonest, fraudulent or deceitful conduct or misrepresentation. Because the conduct for which respondent was convicted was the making of dishonest, fraudulent, deceitful and misrepresentative statements to investors and financial institutions, respondent's violation of D.R. 1-102(A)(4) is self-evident.

The Office of Disciplinary Counsel maintains that respondent also violated D.R. 1-102(A)(5) by engaging in conduct which was prejudicial to the administration of justice. Although we agree that each time an attorney acts in a manner contradictory to that which is expected of an officer of the court the integrity of the justice system is impugned, we will not go so far as to unequivocally state that an attorney's criminal conviction is per se prejudicial to the administration of justice.

An action which is prejudicial to the administration of justice would be an action directly impeding the efficiency of the judicial system. Although in a theoretical sense all crimes against the United States or the Commonwealth exert a detrimental effect on the administration of justice, such a tenuous connection is not the type of violation embodied in D.R. 1-102(A)(5). We therefore conclude that respondent did not violate this rule.

Petitioner's final allegation of a Disciplinary Rule violation concerns Rule 1-102(A)(6), which deals with conduct adversely reflecting upon one's fitness to practice law. The dishonest, fraudulent nature of respondent's crimes, coupled with the fact he is now on probation, lead to the conclusion that he is certainly not fit to practice law. To permit an attorney convicted of making false statements and defrauding two banks of several million dollars would be detrimental to public interest and the integrity of the bar. In light of these findings, it is apparent respondent is unfit to practice law, and that his actions violated D.R. 1-102(A)(6).

Having decided that respondent has violated the three Disciplinary Rules alleged in the petition for discipline, and noting that his conviction itself provides an independent foundation for discipline under Rule 203(b)(1), Pa.R.D.E., we must now determine the appropriate discipline. In any matter involving respondent's criminal conviction as a part of the disciplinary proceeding, the board must "consider the events which surrounded the criminal charge in order 'to weight the impact of the conviction upon the measure of discipline.'" *Office of Disciplinary Counsel v. Eilberg,* 497 Pa. 388, 441 A.2d 1193 (1982), quoting

*Office of Disciplinary Counsel v. Troback,* 477 Pa. 318, 383 A.2d 952 (1978). And as always, we are mindful that our recommended discipline must protect the interests of the public while also upholding the integrity of the bar. *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 526 A.2d 110 (1987).

Our consideration of the three Disciplinary Rule violations alleged in the petition for discipline addressed the events surrounding the criminal charge to the extent it led to the conclusion that respondent's misconduct also encompassed Disciplinary Rule violations extraneous of Rule 203(b)(1), Pa.R.D.E. We must now ascertain the degree of influence these facts have on the appropriate disciplinary sanction.

Respondent participated in a fraudulent real estate scheme which led to his criminal conviction. He has expressed remorse for his actions, and it is fair to say the conviction was aberration, not a normal course of conduct for respondent. Although we do not mean to minimize the gravity of respondent's misconduct, we are aware that respondent cooperated fully with prosecutors, and that he received a relatively lenient sentence by the Florida District Court, which, as the Hearing Committee noted, attested to respondent's minor role in the real estate scheme.

We are also mindful of the abundant character testimony heard by the Hearing Committee. Respondent presented numerous fellow members of the bar, who testified to his high moral character.

In light of all these facts, we conclude that respondent's misconduct is serious enough to warrant suspension, but not his expulsion from the bar, if the interests of the public and his peers are to be served. These twin goals can be achieved by the imposition

of a two-year suspension, retroactive to October 3, 1989, the date of the Supreme Court order temporarily suspending respondent from the practice of law. By suspending respondent for this amount of time, the rules require a petition for reinstatement to be filed and preclude his practicing while on probation.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent [    ] be suspended from the practice of law for a period of two years retroactive to October 3, 1989, the date on which respondent was placed on temporary suspension by the Supreme Court of Pennsylvania.

It is further recommended that the court direct that respondent pay all the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Brown and Hill did not participate in the adjudication.

## ORDER

And now, August 21, 1991, upon consideration of the report and recommendations of the Disciplinary Board dated February 25, 1991, it is hereby ordered that [respondent], be and he is suspended from the bar of this Commonwealth for a period of two years retroactive to October 3, 1989, the date on which respondent was placed on temporary suspension by the Supreme Court of Pennsylvania and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.