## In re Anonymous No. 93 D.B. 89

Disciplinary Board Docket no. 93 D.B. 89.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

BROWN, *Member,* November 13, 1992—Pursuant to the Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court

of Pennsylvania submits its findings and recommendations regarding the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

On May 12, 1989, respondent appeared before the U.S. District Court for the [    ] District of Pennsylvania and entered a plea nolo contendere to an indictment filed at Criminal no. [    ] charging respondent in one count with conspiracy to defraud the United States by obstructing the lawful functions of the Internal Revenue Service, in violation of 18 U.S.C. §371, and in four additional counts of willful and knowing filing false federal income tax returns, in violation of 26 U.S.C. §7206. As a consequence of said plea respondent was sentenced on May 12, 1989, to a term of three years' probation and a fine of $5,000.

On May 30, 1990, respondent, through his counsel, advised the Disciplinary Board of his plea and sentence and requested that the Supreme Court delay issuing any order of temporary suspension until September 11, 1989. Consequently, on September 11, 1989, the court entered an order temporarily suspending respondent from the practice of law in this Commonwealth pursuant to Rule 214(d)(1), Pa.R.D.E.

On October 11, 1989, the Office of Disciplinary Counsel filed the instant petition for discipline alleging, inter alia, the underlying facts and outcome of the federal violations.

On November 22, 1989, respondent filed his answer which admitted the material allegations of the petition for discipline but sought to define the consequences of

his plea of nolo contendere and raised issues related to mitigation.

On May 2, 1990, the parties entered into a comprehensive stipulation and on May 3, 1990, the matter proceeded to hearing before Hearing Committee [    ]. On July 10, 1990, the hearing committee, consisting of Chairman [    ], Esq., [    ], Esq., and [    ], Esq., recommended that respondent be suspended from the practice of law for a period of three years, commencing May 12, 1989, the date of his plea of nolo contendere.

On July 30, 1990, petitioner filed its brief on exceptions to the hearing committee's report and recommendation, contending that respondent's period of suspension commence September 11, 1989, the date of the order temporarily suspending respondent.

The matter was adjudicated at the September 1990 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

We adopt the stipulations entered into by the parties on May 2, 1990:

(1) Respondent is an attorney admitted to practice law in the Commonwealth of Pennsylvania, having been admitted on April 15, 1959.

(2) Respondent presently maintains no office for the practice of law, but resides at [    ].

(3) By order dated September 11, 1989, in response to respondent's request that he be permitted to practice for a period after being sentenced for certain federal violations, the Supreme Court of Pennsylvania suspended

respondent from the practice of law and referred this matter to the Disciplinary Board pursuant to Rule 214(f), Pa.R.D.E., for the institution of formal proceedings against respondent. A true and correct copy of the order temporarily suspending respondent is attached hereto, made a part hereof and marked Exhibit 1.

(4) From in or about 1979 to on or about July 30, 1985, respondent and other persons intentionally and unlawfully conspired to defraud the United States by impeding the Internal Revenue Service in ascertaining, computing, assessing and collecting revenue in violation of 18 U.S.C. §371.

(5) Respondent and others accomplished the foregoing conspiracy by agreeing to "skim" and then skimming a portion of the cash receipts of a restaurant, known as "The [C]," owned by respondent and others.

(6) The conspiracy was executed by directing the manager of the restaurant, a Mr. [A], to take cash from the restaurant's cash registers and divert same to certain employees and stockholders, including respondent, thereby avoid reporting said sums as income on the corporate records.

(7) As a consequence, respondent and other equity participants in "The [C]" received weekly payments from the unlawfully diverted and unreported income.

(8) This conspiracy germinated at a meeting during which the conspirators, including respondent, set forth the specific manner in which Mr. [A] would accomplish the skimming and diversion of cash receipts.

394

(9) As a result of his participation in the foregoing conspiracy, respondent violated 26 U.S.C. §7206 et seq. in that he willfully and knowingly:

(a) made and subscribed false federal personal income tax returns (Forms 1040) for the tax years 1982, 1983 and 1984; and,

(b) participated in filing a false federal corporation income tax return for the calendar year 1984.

(10) On or about April 4, 1989, the grand jury in the U.S. District Court for the [    ] District of Pennsylvania issued a true bill against respondent and others at Criminal no. [    ] in which it charged respondent with one count of conspiracy and four counts of willfully filing false federal income tax returns. A true and correct copy of said indictment is attached hereto, made a part hereof and marked Exhibit 2.

(11) On or about May 12, 1989, respondent entered a plea of nolo contendere to the indictment.

(12) Respondent admitted conduct which involved conspiracy to defraud and willful filing false income tax returns in the manner pled in the indictment and set forth more particularly in the stipulation filed by the parties to this proceeding.

(13) The total tax liability which respondent personally avoided as set forth in the stipulation of record for the three-year period of 1982, 1983 and 1984 was $25,320.24. The annual breakdown was: 1982-$6,295; 1983-$3,767; and 1984-$15,258.24.

(14) On or about May 12, 1989, the Honorable [B], Judge, U.S. District Court for the [    ] District of Pennsylvania, sentenced respondent to two years of impris-

onment, which was suspended, whereby respondent was sentenced to several concurrent three-year terms of probation and to pay a fine of $5,000.

(15) Respondent has paid the $5,000 fine.

(16) On or about May 30, 1989, respondent, through his counsel, notified the secretary of the Disciplinary Board of the fact that the court had accepted his nolo contendere plea and had sentenced him as set forth hereinabove, all in compliance with Rule 214(a), Pa.R.D.E.

(17) On September 28, 1989, in compliance with the court's September 11, 1989, order of temporary suspension, respondent filed his statement of compliance to Rule 217(e), Pa.R.D.E.

## CONCLUSIONS OF LAW

(1) Respondent's May 12, 1989, convictions of violation of 18 U.S.C. §371 and 26 U.S.C. §7206(1) are convictions within the scope of Rule 214(d), Pa.R.D.E. and therefore constitute a per se basis for discipline pursuant to Rule 208, Pa.R.D.E.

(2) Respondent's misconduct constitutes grounds for discipline regardless of the fact that his actions did not occur within the confines of the attorney/client relationship, pursuant to Rule 203(a), Pa.R.D.E.

## DISCUSSION

Respondent's conviction provides a per se basis for discipline under Pennsylvania Rules of Disciplinary Enforcement. Therefore, the issue ripe for adjudication is the appropriate measure of discipline.

In this context we are charged with considering "the events which surround the criminal charge in order to 'weigh the impact of the conviction upon the measure of discipline.'" *Office of Disciplinary Counsel v. Eilberg,* 497 Pa. 388, 441 A.2d 1193 (1982), quoting *Office of Disciplinary Counsel v. Troback,* 477 Pa. 318, 383 A.2d 952 (1978).

The parties have stipulated that respondent's conviction stemmed from his conspiracy with fellow owners of the [C] restaurant to "skim" a portion of the restaurant's receipts, thereby defrauding the United States of income tax monies. Respondent's fraudulent conduct warrants the imposition of discipline regardless of whether or not it involved abuse of the attorney/client relationship as it clearly adversely reflects upon his fitness to practice law. Rule 203(a), Pa.R.D.E. and D.R. 1-102(A)(3), D.R. 1-102(A)(4) and D.R. 1-102(A)(6). Respondent agreed at the May 1990 hearing that all three of these Disciplinary Rules applied to his case. As noted by the Office of Disciplinary Counsel, respondent's participation in a scheme to defraud the U.S. government and willful filing of false tax returns is crimen falsi in nature; and therefore warrants the imposition of the severe disciplinary sanction of suspension. Such fraudulent conduct is the embodiment of moral turpitude. See *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 425 A.2d 730 (1981).

In considering the appropriate period of suspension, we are mindful of respondent's unblemished record and fine reputation. However, respondent's offense was not

an isolated transaction, but involved a systematic scheme to defraud.

The three-year suspension recommended by the hearing committee and Office of Disciplinary Counsel is an appropriate measure of discipline as it reflects the serious nature of respondent's misconduct, protects the interests of the public and maintains the integrity of the bar. *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 526 A.2d 1180 (1987).

Having determined that a three-year suspension from the practice of law is appropriate, the next issue is when the period of suspension should commence. Although respondent's conviction and sentencing occurred on May 12, 1989, he was not suspended from the practice of law until September 11, 1989. Since respondent practiced law until September 11, 1989, his period of suspension should commence on that date in order for the suspension to effectively run for three years. See *Office of Disciplinary Counsel v. [ ],* no. 121 D.B. 88 (suspension was made retroactive to the date of temporary suspension.)

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent be suspended from the practice of law for a period of three years retroactive to September 11, 1989, the date of the court's order temporarily suspending respondent, and that respondent further be ordered to pay the costs of investigating and prosecuting this matter.

Ms. Heh did not participate in the adjudication.

## EXHIBIT 1

And now, September 11, 1989, a rule having been entered by this court on June 29, 1989, pursuant to Rule 214(d)(1), Pa.R.D.E., to show cause why [respondent] should not be placed on temporary suspension, upon consideration of the responses filed, it is hereby ordered that the rule is made absolute; [respondent] is placed on temporary suspension and he shall comply with all the provisions of Rule 217, Pa.R.D.E.; and the matter is referred to the Disciplinary Board pursuant to Rule 214(f), Pa.R.D.E.

## EXHIBIT 2

### *Indictment*

The grand jury charges that:

(1) At all times material to this indictment, the [C] Inc., was a restaurant located at [    ].

(2) At all times material to this indictment, defendant [respondent] was president of the [C].

(3) At all times material to this indictment, defendant [D] was a stockholder of the [C].

(4) From in or about 1979 to July 30, 1985, in the [    ] District of Pennsylvania, defendants [respondent] and [D] knowingly and intentionally did unlawfully conspire, combine, confederate and agree together, and with other persons known to the grand jury, to defraud the United States by impeding, impairing, obstructing and defeating the lawful functions of the Internal Revenue Service of the U.S. Treasury Department in the ascer-

tainment, computation, assessment and collection of revenue and in the examination of income tax returns.

## Manner and Means by which the Conspiracy was Carried Out

(5) It was a part of the conspiracy that the defendants would and did skim a portion of the cash receipts of the [C] and would and did use that unreported income to pay employees and to divide among themselves.

(6) It was a further part of the conspiracy that defendant [respondent] would and did direct the manager of the [C] to take cash from the restaurant's cash registers.

(7) It was a further part of the conspiracy that defendant [respondent] would and did direct a manager of the [C] not to reflect the unreported income on the corporate books and records.

(8) It was a further part of the conspiracy that defendant [respondent] would and did direct a manager of the [C] to use the unreported cash to make weekly payments to certain employees and to the stockholders.

(9) It was a further part of the conspiracy that defendants [respondent] and [D] would and did receive weekly cash payments from the unreported income of the [C].

## Overt Acts

In furtherance of the conspiracy and to effect its object and purposes, the following overt acts, among others, were committed and caused to be committed in the [   ] District of Pennsylvania:

(1) In or about 1977, at [   ] Avenue, [   ], defendants [respondent], [D] and individuals known to the grand

jury had a meeting during which defendant [respondent] told a manager of the [C] restaurant the following:

(a) that the manager would receive $100 per week in addition to his salary, which he should hide and not report to the Internal Revenue Service:

(b) that the manager should remove $2,000 per week from the restaurant's cash registers; and

(c) that the manager should use that $2,000 to make weekly payments to employees and to defendants [respondent], [D] and an individual known to the grand jury.

(2) From in or about 1977, to in or about October 1983, at the [C] Restaurant in [E], Pennsylvania, at the direction of defendant [respondent], individuals known to the grand jury removed approximately $400 from the restaurant's cash register every day for five or six days per week.

(3) From in or about 1977, to in or about October 1983, at the [C] restaurant in [E], Pennsylvania, individuals known to the grand jury adjusted the figures on the restaurant's daily cash settlement sheets to conceal the diverted cash.

(4) From in or about 1977, to in or about October 1983, on a daily basis, at the [C] restaurant in [E], Pennsylvania, individuals known to the grand jury entered the adjusted figures from the daily cash settlement sheets into a cash receipts journal.

(5) From in or about 1977, to in or about October 1983, at the [C] restaurant in [E], Pennsylvania, an individual known to the grand jury made weekly cash payments to employees of the restaurant from the diverted cash.

(6) From in or about 1977, to in or about October 1983, at the [C] restaurant in [E], Pennsylvania, defendants [respondent] and [D] received weekly payments on or about each Wednesday, from the cash that had been diverted from the restaurant's proceeds, in amounts commensurate with their shares in the corporation.

(7) From in or about October 1983, to on or about July 30, 1985, at the [C] restaurant in [E], Pennsylvania, at the direction of defendant [respondent], individuals known to the grand jury took the cash proceeds from the restaurant's weekly Sunday brunch.

(8) From in or about October 1983, to July 30, 1985, at the [C] restaurant in [E], Pennsylvania, defendants [respondent] and [D] received weekly payments on or about each Wednesday from the cash that had been diverted from the restaurant's Sunday brunch, in amounts commensurate with their shares in the corporation.

(9) From in or about 1981, to on or about July 30, 1985, on a monthly basis, at the [C] restaurant in [E], Pennsylvania, at the direction of defendant [respondent], individuals known to the grand jury provided false information regarding the restaurant's gross receipts to the restaurant's accountant.

(10) From in or about January 1978, through in or about January 1985, once a year, in the [ ] District of Pennsylvania, at the direction of defendant [respondent], false W-2 forms were issued to employees of the [C] restaurant, which did not reflect cash compensation, and which were used by these employees to prepare their individual federal income tax returns.

(11) From in or about 1977, to in or about June 1985, in the [ ] District of Pennsylvania, at the direction of defendant [respondent], individuals known to the grand jury gave false information regarding the restaurant's gross receipts to the restaurant's accountant, for the preparation of false quarterly payroll returns and false federal corporate income tax returns.

(12) On or about March 23, 1983, at the [C] restaurant in [E], Pennsylvania, defendants [respondent], [D] and individuals known to the grand jury had a meeting during which they discussed the cash distribution to the owners and the employee cash payroll.

(13) On or about June 22, 1983, at the [C] restaurant in [E], Pennsylvania, defendants [respondent], [D] and individuals known to the grand jury had a meeting during which they discussed making cash payments to employees of the restaurant and diverting cash receipts from banquets held at the restaurant.

(14) On or about March 7, 1984, at the [C] restaurant in [E], Pennsylvania, defendants [respondent] and [D] and an individual known to the grand jury had a meeting during which they discussed making cash payments to employees of the restaurant.

## Overt Acts 15 to 23

On or about each of the following dates, in the [    ] District of Pennsylvania, the defendants filed and caused to be filed the following false federal income tax returns:

| Overt Act | Date | Defendant | Type of Return |
|---|---|---|---|
| (15) | 4/9/83 | [D] | 1982, Form 1120 |
| (16) | 8/17/83 | [D] | 1982, Form 1040 |
| (17) | 2/17/84 | [Respondent] | 1982, Form 1040 |
| (18) | 4/9/83 | [D] | 1983, Form 1040 |
| (19) | 4/16/84 | [Respondent] | 1983, Form 1040 |
| (20) | 10/17/84 | [D] | 1983, Form 1040 |
| (21) | 5/22/85 | [Respondent] | 1984, Form 1120 |
| (22) | 4/15/85 | [D] | 1984, Form 1040 |
| (23) | 4/15/85 | [Respondent] | 1984, Form 1040 |

All in violation of Title 18, U.S. Code, §371.

## Count Two

The grand jury further charges that on or about April 9, 1983, in the [   ] District of Pennsylvania, defendant [D], who, during the fiscal year 1982 was a stockholder of the [C] restaurant, did willfully and knowingly make and subscribe a U.S. Corporation Income Tax Return of the [C] Inc., Form 1120, for the calendar year 1982, which was false and fraudulent as to a material matter, in that it represented that the gross receipts or sales of the [C] for that year totalled $1,180,810, whereas, as the defendant [D] then and there well knew and believed, the total gross receipts or sales of the [C] for 1982 were substantially more than $1,180,810.

In violation of Title 26, U.S. Code, §7206(1).

404

## Count Three

The grand jury further charges that on or about April 9, 1984, in the [   ] District of Pennsylvania, defendant [D] who, during the fiscal year 1983 was stockholder of the [C] restaurant, did willfully and knowingly make and subscribe a U.S. Corporation Income Tax Return of the [C] Inc., Form 1120, for the calendar year 1983, which was false and fraudulent as to a material matter, in that it represented that the gross receipts or sales of the [C] for that year totalled $1,352,235, whereas, as the defendant [D] then and there well knew and believed, the total gross receipts or sales of the [C] for 1983 were substantially more than $1,353.235.

In violation of Title 26, U.S. Code, §7206(1).

## Count Four

The grand jury further charges that on or about May 22, 1985, in the [   ] District of Pennsylvania, defendant [respondent], who, during the fiscal year 1984 was president of the [C] restaurant, did willfully and knowingly make and subscribe a U.S. Corporation Income Tax Return of the [C] Inc., Form 1120, for the calendar year 1984, which was false and fraudulent as to a material matter, in that it represented that the gross receipts or sales of the [C] for that year totalled $1,479,585, whereas, as the defendant [respondent] then and there well knew and believed, the total gross receipts or sales of the [C] for 1984 were substantially more than $1,479,585.

In violation of Title 26, U.S. Code, §7206(1).

## *Count Five*

The grand jury further charges that on or about February 17, 1984, in the [    ] District of Pennsylvania, defendant [respondent] did willfully and knowingly make and subscribe a joint U.S. Individual Income Tax Return, Form 1040, for the calendar year 1982, which was verified by a written declaration that it was made under penalties of perjury and was filed with the Internal Revenue Service, which said income tax return he did not believe to be true and correct as to every material matter, in that it represented that his total income for that year was $34,319, whereas, as the defendant [respondent] then and there well knew and believed, his total income for 1982 was substantially more than $34,319.

In violation of Title 26, U.S. Code, §7206(1).

## *Count Six*

The grand jury further charges that on or about April 16, 1984, in the [    ] District of Pennsylvania, defendant [respondent] did willfully and knowingly make and subscribe a joint U.S. Individual Income Tax Return, Form 1040, for the calendar year 1983, which was verified by a written declaration that it was made under penalties of perjury and was filed with the Internal Revenue Service, which said income tax return he did not believe to be true and correct as to every material matter, in that it represented that his total income for that year was $7,108.52, whereas, as the defendant [respondent] then and there well knew and believed, his total income for 1983 was substantially more than $7,108.52.

In violation of Title 26, U.S. Code, §7206(1).

## *Count Seven*

The grand jury further charges that on or about April 15, 1985, in the [    ] District of Pennsylvania, defendant [respondent], did willfully and knowingly make and subscribe a joint U.S. Individual Income Tax Return, Form 1040, for the calendar year 1984, which was verified by a written declaration that it was made under penalties of perjury and was filed with the Internal Revenue Service, which said income tax return he did not believe to be true and correct as to every material matter, in that it represented that his total income for that year was $101,201.99, whereas, as the defendant [respondent] then and there well knew and believed, his total income for 1983 was substantially more than $101,201.99.

In violation of Title 26, U.S. Code, §7206(1).

## *Count Eight*

The grand jury further charges that on or about August 17, 1983, in the [    ] District of Pennsylvania, defendant [D] did willfully and knowingly make and subscribe a joint U.S. Individual Income Tax Return, Form 1040, for the calendar year 1982, which was verified by a written declaration that it was made under penalties of perjury and was filed with the Internal Revenue Service, which said income tax return he did not believe to be true and correct as to every material matter, in that it represented that his total income for that year was $20,677, whereas, as the defendant [D] then and there well knew and believed, his total income for 1982 was substantially more than $20,677.

In violation of Title 26, U.S. Code, §7206(1).

## Count Nine

The grand jury further charges that on or about October 17, 1984, in the [    ] District of Pennsylvania, defendant [D] did willfully and knowingly make and subscribe a joint U.S. Individual Income Tax Return, Form 1040, for the calendar year 1983, which was verified by a written declaration that it was made under penalties of perjury and was filed with the Internal Revenue Service, which said income tax return he did not believe to be true and correct as to every material matter, in that it represented that his total income was $25,842, whereas, as the defendant [D] then and there well knew and believed, his total income for 1983 was substantially more than $25,842.

In violation of Title 26, U.S. Code, §7206(1).

## Count Ten

The grand jury further charges that on or about April 15, 1985, in the [    ] District of Pennsylvania, defendant [D] did willfully and knowingly make and subscribe a joint U.S. Individual Income Tax Return, Form 1040, for the calendar year 1984, which was verified by a written declaration that it was made under penalties of perjury and was filed with the Internal Revenue Service, which said income tax return he did not believe to be true and correct as to every material matter, in that it represented that his total income was $29,665, whereas, as the defendant [D] then and there well knew and believed, his total income for 1984 was substantially more than $29,665.

In violation of Title 26, U.S. Code, §7206(1).

## ORDER

The rule to show cause entered by this court on April 3, 1991, is discharged. It is ordered that respondent be

and he is suspended from the bar of this Commonwealth for a period of three years, retroactive to September 11, 1989, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Justice Larsen and Flaherty did not participate in the consideration or decision of this matter.