## In re Anonymous No. 2 D.B. 88

Disciplinary Board Docket no. 2 D.B. 88.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

ECKELL, *Member,* November 19, 1992—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

### HISTORY OF PROCEEDINGS

Respondent was suspended from the practice of law in the Commonwealth of Pennsylvania by Supreme Court order dated December 30, 1987, pursuant to Rule 214(d), Pa.R.D.E.

Respondent's suspension resulted from his August 21, 1987, conviction in the U.S. District Court for the [　] District of Pennsylvania of violating the Hobbs Act (18 U.S.C. §1951) by committing extortion under color of official right. At the time the Hobbs Act violation oc-

curred, respondent was a judge-elect of the [ ] Court of [ ].

On January 20, 1988, the Office of Disciplinary Counsel filed a petition for discipline.

A hearing on the matter was held on March 1, 1989 before Hearing Committee [ ], which consisted of [ ]. On August 11, 1989, the Hearing Committee filed its report and recommended that respondent be suspended from the practice of law for a period of five years, retroactive to September 1, 1987, the date respondent voluntarily resigned from the bench.

On August 31, 1989, petitioner filed its brief on exceptions to the Hearing Committee report. Petitioner argued that the gravity of respondent's offense warrants his disbarment.

Respondent filed his brief on exceptions to the Hearing Committee report on September 5, 1989.

On September 27, 1989, respondent filed a brief in opposition to petitioner's exceptions. This brief urged the Disciplinary Board to impose a lengthy suspension on respondent in lieu of disbarment.

The matter was adjudicated at the December 8, 1989 meeting of the Disciplinary Board.

## FINDINGS OF FACT

(1) Respondent was admitted to the Pennsylvania bar in 1981.

(2) On November 5, 1985, respondent was elected judge of the [ ] Court of [ ]. His term of office was to begin in January 1986. At the time of his election, respondent was 28 years of age.

(3) Prior to his election to the bench, respondent was engaged in the private practice of law.

(4) On December 19, 1985, respondent met with [A], President of [B] Local [ ], at the [B] Union headquarters. The meeting was initiated by [A].

(5) Respondent brought to this meeting a copy of the new assignment schedule for [ ] Court judges which he gave to [A]. The [ ] Court judges' assignment schedule is a matter of public record.

(6) At the December 19, 1985, meeting, [A] handed respondent, and respondent accepted, an envelope marked "Seasons Greetings" which contained $300 in cash.

(7) Respondent and [A] then engaged in a discussion about excessive bail being set by a Republican bail commissioner. In that context, the following occurred:

*[Respondent]:* "I'm at home. I just have to be on call. They give me a little beeper. Okay, so if it beeps I call into City Hall. What it means is if somebody wants to take an appeal on bail that was set at the Roundhouse...."

*[A]:* "Yeah...."

*[Respondent]:* "Ah, let's say, for example, ah, one of — your boys gets arrested, he goes in front of a ... crazy [C], puts a million dollars bail on him."

*[A]:* "Where's she? In the Roundhouse?"

*[Respondent]:* "Yeah. She's one of the bail commissioners."

*[A]:* "What's her name?"

*[Respondent]:* "[C]. Now, she's a Republican. She's been setting bails like that are unreal. So, once bail is set on, you have an automatic right to appeal it. Okay, so what they do is they call the emergency judge. I just pick up the phone and they set like a three-way conference or a four-way conference and I hear it over the phone and I decide what bail will be. Okay?"

*[A]:* "Ah, no wonder they ain't killing you."

*[Respondent]:* "Now, whenever you see a letter like E, B, like A, something like that ... that means it's one of the district courts. Okay? But I don't have, I'll get you like, there's five different districts. I'll get you what they are."

*[A]:* "I can call you up."

*[Respondent]:* "Okay."

*[A]:* "Just give you a call, all right? And you rest assured, I won't embarrass you."

*[Respondent]:* "Okay."

(8) [A] subsequently offered respondent free tickets to political affairs, "jobs for kids in the district," and additional funds to cover political debts. (The conversation between respondent and [A] was recorded as part of a government probe of improprieties occurring within [B] Union Local [    ].)

(9) Respondent did not accept these offers and rejected further political campaign contributions from [A] and [B] Union Local [    ].

(10) Respondent had done legal research for [D], Esq., Counsel for [B] Union Local [    ] in 1985. The research involved union-related issues. Respondent had not accepted any fee for his services at the time.

(11) On January 6, 1986, respondent took his oath of office as a judge for the [    ] Court of [    ].

(12) On October 1, 1986, respondent was indicted by a grand jury in the U.S. District Court for the [    ] District of Pennsylvania. The indictment charged respondent with one count of extortion under color of official right, in violation of the Hobbs Act (18 U.S.C. §1951) in connection with his acceptance of $300 from [A] and [B] Union Local [    ].

(13) On August 21, 1987, a jury found respondent guilty as charged. The Honorable [E] presided over the four-day trial.

(14) On September 1, 1987, respondent voluntarily resigned his judgeship, although he was not required to do so.

(15) On December 3, 1987, respondent was sentenced as follows by Judge [E]: imprisonment of a term of 30 months, to pay a fine of $10,000 to the United States, and pay a special assessment of $50.

(16) Respondent was suspended from the practice of law, pursuant to Rule 214(d), Pa.R.D.E., by Supreme Court order dated December 30, 1987.

(17) Respondent was incarcerated at the Camp at [    ], Pa. He was released on parole on November 29, 1988. Respondent will remain on parole through July 1990.

(18) Since his release from prison, respondent has been employed in an executive position by the [F] Organization.

(19) The petition for discipline alleges that respondent's conduct violated the following Disciplinary Rules:

(A) D.R. 1-102(A)(1), which prohibits an attorney's violation of a Disciplinary Rule;

(B) D.R. 1-102(A)(3), which prohibits an attorney's engagement in illegal conduct involving moral turpitude;

(C) D.R. 1-102(A)(5), which prohibits an attorney's engagement in conduct that is prejudicial to the administration of justice; and

(D) D.R. 1-102(A)(6), which prohibits an attorney's engagement in conduct that adversely reflects upon his fitness to practice law.

## CONCLUSIONS OF LAW

(1) Respondent's August 21, 1987, conviction for violating 18 U.S.C. §1951 is a conviction within the scope of Rule 214(d), Pa.R.D.E.

(2) Respondent's conviction constitutes a per se independent basis for discipline under Rule 203, Pa.R.D.E.

(3) Respondent's misconduct is grounds for discipline regardless of the fact that his actions did not occur in the course of an attorney-client relationship. (Rule 203(a), Pa.R.D.E.)

## DISCUSSION

Respondent's criminal conviction provides a per se basis for discipline under Pennsylvania Rules of Disciplinary Enforcement. Therefore, the sole issue before the Disciplinary Board is the appropriate disciplinary sanction to be imposed upon respondent.

It must be noted from the outset that it is incumbent upon the Disciplinary Board to "consider the events which surround the criminal charge in order to 'weigh the impact of the conviction upon the measure of discipline.'" *Office of Disciplinary Counsel v. Eilberg,* 497 Pa. 388, 441 A.2d 1193 (1982), quoting *Office of Disciplinary Counsel v. Troback,* 477 Pa. 318, 383 A.2d 952 (1978).

The overriding consideration in this case is the fact that respondent was a judge-elect at the time the misconduct occurred. Although respondent had not yet undertaken his oath of office when he met with [A] on December 19, 1985, he will be held to the same high standard as a judge in order to ensure public confidence. *Matter of Cunningham,* 517 Pa. 417, 538 A.2d 473 (1988). A judge, as an elected official, is held to a higher standard of conduct because the office of judge embodies a

public trust. *Matter of Cunningham; Office of Disciplinary Counsel v. Eilberg.*

Respondent's receipt of $300 from a local union official was clearly an acceptance of funds in exchange for exercising his influence as a [    ] Court judge. Such conduct is clearly in violation of Article V, section 17(b) of the Pennsylvania Constitution:

"No justice, judge or justice of the peace shall be paid or accept for the performance of any judicial duty or for any service connected with his office, any fee, emolument or perquisite other than the salary and expenses provided by law."

Respondent's conduct is also a flagrant violation of the Code of Judicial Conduct, Canons 2A, 5C(1), and 7B(1)(c), which require a judge to maintain an appearance of propriety and integrity and refrain from engaging in conduct tending to reflect adversely on judicial impartiality.

Within the specific jurisdiction of this board, by committing the crime of extortion under color of official right, respondent violated D.R. 1-102(A)(3), which prohibits a lawyer from engaging in illegal conduct involving moral turpitude; D.R. 1-102(A)(5), which prohibits a lawyer from engaging in conduct prejudicial to the administration of justice; and D.R. 1-102(A)(6), which prohibits a lawyer from engaging in other conduct which adversely reflects on his fitness to practice law.

Because egregious misconduct such as that exhibited by respondent erodes public confidence in the bench and the bar, a lengthy suspension is the appropriate disciplinary sanction to be imposed so that the interests of the public and integrity of the bar are protected.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent be suspended from the practice of law for a period of four years, retroactive to December 30, 1987. The board recommends further that respondent be ordered to pay the costs of investigating and prosecuting this matter.

Ms. Heh and Mr. Stoelker did not participate in the adjudication.

## ORDER

And now, November 19, 1992, the order entered by this court on December 30, 1987, is vacated, and respondent is hereby reinstated to the practice of law in this Commonwealth.

Mr. Justice Larsen did not participate in this matter.

Mr. Chief Justice Nix files a concurring statement.

Mr. Justice Papadakos dissents.

## CONCURRING STATEMENT

NIX, *C.J.*, November 19, 1992—I concur in the decision reached by the majority today. I write separately only to note the particular facts of this case.

[Respondent] was convicted of violating the Hobbs Act, 18 U.S.C. §1951, in the U.S. District Court for the [    ] District of Pennsylvania on August 27, 1987. This court suspended him from the practice of law on December 30, 1987, and referred the matter to the Disciplinary Board pursuant to Rule 214(f), Pa.R.D.E. Because the board's original recommended sanction of a four-year suspension has already been served, I see no reason to disagree with [respondent's] reinstatement to the practice of law in this Commonwealth at this time.