**In re Anonymous No. 114 D.B. 90**

Disciplinary Board Docket no. 114 D.B. 90.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

GILARDI, *Member,* October 18, 1993—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

On November 30, 1990 the Office of Disciplinary Counsel filed a petition for discipline of respondent. The petition was filed after the Supreme Court discharged a rule to show cause why respondent should not be temporarily suspended from the practice of law because of his February 1990 plea of guilty to two charges of driving under the influence of alcohol, in violation of 75 Pa.C.S. §3731(a)(1).

The matter was referred to Hearing Committee [    ], which included Chairman [    ], Esq., and [    ], Esq.

On July 25, 1991 the parties entered into extensive stipulations concerning the conduct which led to respondent's guilty pleas.

On August 6 and 7, 1991, October 14, 1991, and February 18, 1992, the Hearing Committee held hearings on the matter.

Petitioner filed a brief on the matter on May 18, 1992 and recommended that respondent receive a two-year suspension, to be entirely stayed, and a public censure before the Supreme Court, and be placed on a three-year probation, subject to extensive monitoring.

.

Respondent filed a brief on June 16, 1992 and suggested that probation would be the appropriate measure of discipline.

The Hearing Committee filed its report on December 23, 1992 and recommended that respondent receive a private reprimand and be placed on a closely monitored probation for a period of three years.

The matter was adjudicated at the February 25, 1993 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

The following is a summary of the salient facts underlying the instant proceedings. An extensive finding of facts is found at the appendix, and based on the stipulations entered into by the parties.

(1) Petitioner, whose principal office is now located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, Pa., is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent was born on [   ] and was admitted to practice law in the Commonwealth of Pennsylvania on or about March 8, 1985.

(3) Respondent was admitted to practice law in the State of Florida in July 1984.

(4) Respondent is currently practicing law at the Law Offices of [A].

(5) Photocopies shall be admissible in evidence in lieu of originals.

(6) On September 26, 1985, respondent was arrested in [    ], Florida.

(7) As a result of the September 26, 1985 arrest, the Office of the State Attorney filed a two-count information charging respondent with possession of a controlled substance, to wit: cocaine, in violation of Florida Statutes §893.13, and resisting an officer without violence to his person, in violation of Florida Statutes §843.02.

(8) On December 5, 1985, respondent entered a plea of no contest in [    ] County Circuit Court. The [    ] County Circuit Court found respondent guilty of the charges, but the adjudication of guilt was withheld pursuant to Florida Statutes §948.01(3), and respondent was placed on probation for a period of 18 months beginning December 5, 1985; respondent was ordered to successfully complete a residential drug program at [    ] Hospital and pay $1,000 to the SAVE drug program as special conditions of probation.

(9) On July 25, 1986, respondent was arrested in [    ], Pa.; on August 4, 1986, respondent entered a plea of guilty to the charge of disorderly conduct (18 P.S. §5503), a summary offense under the Pennsylvania Crimes Code, and was required to pay a fine of $50 and costs.

(10) By order dated August 25, 1986, the [    ] County Circuit Court, after a hearing on respondent's motion, modified respondent's special probation in [    ] County, Florida, as follows:

(a) Respondent would be allowed to work and reside in the Commonwealth of Pennsylvania;

(b) Respondent would be allowed to make his monthly reports in writing, by mail;

(c) Respondent would not be required to complete the [    ] Hospital drug/alcohol program; and

(d) Respondent would be required to continue to actively participate in Alcoholics Anonymous.

(11) On June 13, 1987, at 3:59 a.m., respondent was arrested by [    ] police after respondent was observed driving a vehicle that was allegedly swaying in an out of his driving lane. The arresting officer determined that respondent failed several roadside sobriety tests and refused to take a blood test to determine his blood-alcohol level. Respondent was charged with driving under influence of alcohol or controlled substance, 75 Pa.C.S. §3731(a), and subsequently formally charged in a criminal matter captioned *Commonwealth of Pennsylvania v. [Respondent],* filed in the Court of Common Pleas of [    ] County at bill of information no. [    ]. On January 14, 1988, [respondent] was accepted into the accelerated rehabilitative disposition (ARD) program.* Pursuant to Pa.R.Crim.P. 176 et seq., the court

---

* This stipulation is not to be considered as evidence of respondent's guilt of any crime charged in connection with his June 13, 1987 arrest, as acceptance into the ARD program requires that all criminal proceedings be deferred, and the defendant may move the court for an order dismissing the charges against him upon satisfactory completion of the program. Pa.Crim.P. 185. If the defendant violates or does not comply with any condition, the court may order, when appropriate, that the program be terminated, and that the attorney for the Commonwealth proceed on the charges as if there had been no recommendation that the defendant be included in the A.R.D. program. Pa.R.Crim.P. 184(c).

Respondent's acceptance into the ARD program at no. [    ] is admitted, among other things, to explain the mandatory sentencing scheme applicable to respondent's convictions at bills of information no. [    ] and no. [    ]. For under 75 Pa.C.S. §3731(e)(2),

deferred further proceedings and placed respondent on probation for a period of 12 months and imposed various conditions.

(12) On June 19, 1987, at 1:20 a.m., respondent was arrested by officers of the [    ] ( [    ] County) Police Department after being observed slumped over the wheel of his car. Respondent failed two of three field tests and had a breath-alcohol level of .16 percent. Respondent was subsequently charged in the Court of Common Pleas of [    ] County at bill no. [    ] with driving under the influence of alcohol or controlled substance, 75 Pa.C.S. §3731.

(13) On July 13, 1987, at 2:04 a.m., respondent was arrested by officers of the [    ] Police Department. The arresting officer, who was the same officer involved in the June 13, 1987 arrest, observed that respondent failed both roadside sobriety tests. Respondent consented to the drawing of a blood sample for the determination of blood-alcohol level. A blood sample was drawn at 3:15 a.m. The blood sample was analyzed at [B] Laboratory and showed that [respondent] had a blood-alcohol level of .245 percent. Respondent was subsequently charged with driving under influence of alcohol or controlled substance, 75 Pa.C.S. §3731, in

---

"[a]cceptance of accelerated rehabilitative disposition ... under this section shall be considered a first conviction for the purpose of computing whether a subsequent conviction of a violation of this section shall be considered a second, third, fourth or subsequent conviction." Title 75 Pa.C.S. §3731(e)(1)(iv) provides, in pertinent part, that when a person is convicted of violating section 3731 "the sentencing court shall order the person to ... serve a minimum term of imprisonment of not less than one year if the person has three times previously been convicted of an offense of this section or of an equivalent offense in this or other jurisdictions within the previous seven years."

the Court of Common Pleas of [    ] County at bill no. [    ].

(14) From September to November 1987, respondent was treated by [C], M.D., and [D], Ed.D., licensed psychologist, for depression-related and alcohol-related illnesses.

(15) On January 14, 1988 respondent pled guilty to two separate violations of driving under influence of alcohol or controlled substance, 75 Pa.C.S. §3731, as a result of his arrests of June 19 and July 13, 1987.

(a) On bill no. [    ], the court sentenced respondent to undergo imprisonment for not less than 48 hours nor more than 23 months in the [    ] County Prison, and to pay costs of prosecution and a fine of $300 during the first 12 months of parole.

(b) On bill no. [    ], the court sentenced respondent to undergo imprisonment for not less than 48 hours nor more than 23 months in the [    ] County Prison, said term of imprisonment to run consecutively to the sentence imposed on bill no. [    ]; the sentencing court also imposed the same fines and costs to be paid within 12 months of parole.

(16) Subsequently, respondent filed a petition under the Post-Conviction Relief Act alleging that his trial counsel had been ineffective in failing to advise him regarding the habitual offender penalties that could result from his convictions.

(a) On October 24, 1988 the court held a hearing.

(b) By order dated February 11, 1988 the court modified the previously imposed sentence of incarceration on bill no. [    ] and imposed a new sentence of incarceration of 96 hours to 23 months in the [    ] County Prison, said sentence to be computed from January 29, 1988; respondent was also ordered to pay a $300 fine

plus costs, undergo a CRN evaluation and attend safe driving school.

(c) By order dated February 11, 1988 the court modified the original sentence of incarceration imposed on bill no. [　] and imposed a new sentence of 23 months probation, said sentence of probation to begin January 29, 1988 and to run concurrently with the new sentence imposed on bill no. [　].

(d) By order dated November 4, 1988, the court dismissed respondent's PCRA petition.

(17) On May 20, 1989, at approximately 5:20 a.m., [　] police officers [E], badge no. [　], and [F], badge no. [　], were patrolling the downtown Central District of [　], [　] County, Pa.

(18) Police officer [E] observed a 1987 BMW with Pennsylvania license plate [　] stopped at the intersection of [　] and [　] streets, although the traffic light was green; the BMW's engine was running and the BMW's high beams were turned on.

(19) Police officer [E] observed that:

(a) Respondent, who was wearing a business suit, was slumped over the steering wheel and asleep; and,

(b) On the floor of the rear passenger area was an empty can of beer.

(20) When Officer [E] opened the driver's door, reached in and turned off the engine, respondent awoke.

(21) Officer [E] asked respondent if he was "O.K.," at which time Officer [E] observed that respondent was in a state of confusion, respondent's eyes were very dilated, and respondent could not find his identification cards or driver's license.

(22) Officer [E] asked respondent to exit the vehicle, at which time Officer [E] observed that respondent was unsteady on his feet.

(23) Officer [E] asked respondent to walk a straight line, but respondent had trouble doing so.

(24) Officer [E] then placed respondent under arrest and transported him to the [   ] Township Police Department for a breathalyzer test.

(25) Respondent refused to take the breathalyzer test.

(26) Respondent was advised before and after his refusal that he would lose his license for one year simply for refusing to take the test.

(27) Respondent was taken back to [   ] for police processing, at which time respondent was formally charged with driving under influence of alcohol or controlled substance, 75 Pa.C.S. §3731(a), in a criminal matter captioned *Commonwealth of Pennsylvania v. [Respondent],* filed in the Court of Common Pleas of [   ] County at bill of information no. [   ].

(28) In or about December 1989, respondent was receiving alcohol-abuse counseling at the [G] Center.

(29) On December 31, 1989, at approximately 12:15 a.m., [H] was driving a Ford Mercury automobile westbound on [   ], [   ] County, Pa.

(30) Respondent was operating a BMW which was owned by [I] Corporation, [   ], and leased to a third person.

(31) Respondent pulled the BMW out of [   ] Road into the path of travel of, and struck, the [H] vehicle.

(32) Respondent did not stop for a stop sign posted at that intersection.

(33) [H] suffered bumps and bruises from the collision but did not require hospitalization.

(34) Respondent returned to the BMW, which had been extensively damaged; the damages included a broken front headlight, a crumpled front hood, and a pushed-in wheel well.

(35) Respondent drove away from the accident scene.

(36) Witnesses observed respondent make a U-turn at the intersection of [    ] and [    ] in [    ] and drive eastbound on [    ] past the accident scene.

(37) Respondent did not give immediate notice of an accident to the police, in violation of 75 Pa.C.S. §3743 (accident involving damage to attended vehicle or property).

(38) Respondent drove the BMW to [    ] and [    ] Road in [    ] Township, [    ] County, Pa.

(39) [J] was driving his vehicle at the intersection of [    ] and [    ] Road when he observed respondent behind the BMW in the southbound lane of [    ].

(40) [J] helped respondent push the BMW off the roadway.

(41) Respondent asked [J] to give him a ride home and told [J] he would deal with the police later.

(42) Respondent had difficulty giving [J] directions to his home.

(43) On December 31, 1989 Pennsylvania State Troopers [K] and [L], from Troop "[    ]," [    ] Station, were working in full uniform and in a marked patrol vehicle.

(44) At approximately 12:30 a.m., they responded to the scene of the hit-and-run accident and interviewed [H] and witnesses.

(45) Troopers [K] and [L] received a radio call directing them to [    ] and [    ] Road, where they located respondent's BMW.

(46) Troopers [K] and [L] then went to respondent's residence at [    ].

(a) Respondent's wife, [M], greeted both troopers.

(b) [M] stated that she had just driven respondent home from [     ] and that he was in bed sleeping.

(c) When Trooper [K] asked to speak to respondent, respondent came down to the living room.

(d) Trooper [K] observed that respondent had a strong odor of an alcoholic beverage on his breath, that his speech was slurred, that his eyes were glassy, and that his walk was unsure, swaying and staggering.

(47) Troopers [K] and [L] placed respondent under arrest and transported him to the Pennsylvania State Police Barracks in [     ] for a breathalyzer test.

(48) After being advised that if he refused to take the breathalyzer test his license would be suspended for a period of 12 months, respondent refused to take the breathalyzer test.

(49) Respondent was released to his wife.

(50) On December 31, 1989, at approximately 11 p.m., respondent and his wife voluntarily went to the Pennsylvania State Police Barracks in [     ] and requested to speak with Trooper [K].

(51) Trooper [K] advised respondent of his *Miranda* warnings in the presence of Corporal [L] and Trooper [M], at which time respondent signed a waiver of rights and made the following statement:

"I have poor recollection about the accident. I was coming home last night, I was driving a BMW. Actually I sub-lease under a private agreement. I made the payments and I pay the insurance. I was at a private residence above [     ]. I got lost lost [sic] following friends home. I got onto a road, I never was on before. I didn't have my glasses. It was rather slippery out. I didn't know the composition of the road. I applied the brakes. I couldn't stop the car. I saw the light and I hit my head and I really don't know where, but

I knew there had been an accident. I saw the other gentleman get out of the car. I began to lose it. I never had an accident. No question the accident was my fault. I got out of the car. I was yelling. He started yelling at me. I became enraged. I asked him not to call the police. He thought I was going to hurt him. I didn't know where I was. I got the car down to [ ] Road. People came by and these kids picked me up. I was shakened [sic] and I couldn't think. I thought I was not drunk at the time of the accident. I'm on a diet and I haven't eaten anything solid in awhile.

"I poured my self [sic] a half of a glass of bourbon and drank it. Then I was yelling at my wife and I told her to shut up and to do what I tell her. I did this before you came to our house.

"I had two beers before the accident. I can't drink. When you are on my diet you can't drink. I can't be involved with the law. If there were any false reports made they were my fault. I am taking an antibiotic Amoxicilin and I am under a doctor's care in my weight reduction program—Dr. [O]."

(52) The BMW driven by respondent was insured by [P], which settled [H's] claim for property damage in the amount of $4,600.

(53) Respondent was formally charged with driving under influence of alcohol or controlled substance, 75 Pa.C.S. §3731(a); accident involving damage to attended vehicle or property, 75 Pa.C.S. §3743; reckless driving, 75 Pa.C.S. §3714; false reports to law enforcement authorities, 18 Pa.C.S. §4906; harassment, 18 Pa.C.S. §3709; and disorderly conduct, 18 Pa.C.S. §5503, in a criminal matter captioned *Commonwealth of Pennsylvania v. [Respondent],* which was filed in

the Court of Common Pleas of [    ] County at bill of information no. [    ].

(54) From January 10, 1990 to February 9, 1990, respondent was treated as an in-patient for substance abuse and psychological problems at the [    ] ·Unit of the [    ] Hospital. Respondent continued out-patient treatment on a weekly basis with [Q], M.D.

(55) On February 9, 1990 respondent pled guilty to the charge of driving under influence of alcohol or controlled substance at bill of information no. [    ]. Respondent was sentenced to undergo imprisonment for not less than 12 months nor more than 24 months in the [    ] County Correctional Facility, and to pay the costs of prosecution and a fine of $200 in monthly installments as directed by the probation department. The court imposed a special condition that respondent was not to drive anywhere, at any time and under any circumstances. The court also deemed respondent eligible for work release.

(56) On February 9, 1990, respondent entered a plea of guilty to the charges of driving under influence of alcohol or controlled substance on bill of information no. [    ], and accident involving damage to attended vehicle or property on bill of information no. [    ].

(57) On February 9, 1990, on the charge of driving under the influence, the court sentenced respondent to undergo imprisonment for not less than 12 months nor more than 24 months in the [    ] County Correctional Facility; to pay the costs of prosecution and a fine of $200 in monthly installments as directed by the probation department; and to comply with the special condition of parole by not driving anywhere, at any time and under any circumstances. The court also deemed respondent eligible for work release. On the charge of accident involving damage to attended vehicle or

property, the court sentenced respondent to undergo imprisonment in the county prison for a period of 30 days to run consecutively to the term of imprisonment imposed on the driving under the influence charge, and to pay a $200 fine in monthly installments as directed by the probation department.

(58) Respondent's arrest on May 20, 1989, and his subsequent conviction at bill no. [    ], constituted a violation of his parole on bill no. [    ] and of his probation on bill no. [    ].

(59) Respondent's arrest on December 31, 1989 and his subsequent convictions at bills no. [    ] and no. [    ], constituted a violation of respondent's parole on bill no. [    ] and of respondent's probation on bill no. [    ].

(60) On February 9, 1990, the court also held a *Gagnon II* sentencing proceeding as a result of respondent's parole and probation violations.

(a) With respect to respondent's violation of his parole on bill no. [    ], the court revoked respondent's parole and ordered him to serve a minimum of three months, calculated from January 3, 1990, in the [    ] County Correctional Facility, respondent to be eligible for re-parole at the completion of the three-month minimum.

(b) With respect to respondent's violation of his probation at bill no. [    ], the court revoked respondent's probation and sentenced respondent to six to 23 months in the [    ] County Correctional Facility, said sentence to be served consecutively to the three-month sentence imposed on the parole violation.

(c) The court ordered that the concurrent sentences imposed on bills no. [    ] and [    ] be served consecutively to the parole and probation violation sentences.

(61) The [    ] County Correctional Institution, Office of Admissions has computed respondent's minimum release date to be November 2, 1991.

(62) By letter dated February 23, 1990, and received by the Disciplinary Board on February 26, 1990, respondent notified the Secretary to the Disciplinary Board of his guilty pleas entered on February 9, 1990.

(63) On January 14, 1988 respondent pleaded guilty to two separate violations of drunk driving on June 19 and July 13, 1987. Respondent was sentenced to consecutive terms of imprisonment for not less than 48 hours nor more than 23 months in the [    ] County Prison.

(64) Respondent was charged with a separate incidence of drunk driving, which occurred on May 20, 1989.

(65) On December 31, 1989 respondent was involved in yet another drunk driving incident. After failing to heed a posted stop sign, he caused a collision with another vehicle, verbally threatened and blamed the driver of that automobile, fled the scene, and subsequently, with the aid of his wife, denied any involvement in the accident when questioned by the police.

(66) Respondent was arrested and formally charged for his criminal conduct.

(67) On February 9, 1990, respondent pled guilty to driving while intoxicated in May 1989 and December 1989, and accidents involving damage to attended vehicle or property. Respondent was sentenced as follows: imprisonment for 12 to 24 months in [    ] County Correctional Facility for each count of drunk driving, as well as 30 consecutive days of incarceration for the accidents, violation and payment of the costs of prosecution and a fine of $200 in monthly installments

for each of his offenses. Respondent was also forbidden to drive under any circumstances and ordered to serve two consecutive terms of three months' imprisonment for parole violations. Respondent was deemed eligible for work release, and served his sentence in the work release facility in [     ].

(68) Respondent's criminal sanctions for alcohol-related conduct merely reflect the importance alcohol has played in the respondent's life. He is an admitted alcoholic who began drinking at the age of 12. From January 10, 1990 to February 9, 1990, respondent was treated as an in-patient for substance abuse and psychological problems at the [     ] Unit of the [     ] Hospital under the care of Dr. [Q]. It was Dr. [Q's] recommendation that respondent engage in out-patient psychotherapy, which he has.

(69) Petitioner's expert, [R], M.D., diagnosed respondent's condition as chronic alcohol abuse syndrome.

(70) Expert testimony before the Hearing Committee demonstrated that respondent's alcoholism was a causal factor in his driving while intoxicated, the conduct for which he is being disciplined.

(71) Respondent has been sober for over three years, and attended over 500 Alcoholics Anonymous Meetings between February 1990 and August 1991.

## CONCLUSIONS OF LAW

Respondent's February 9, 1990 conviction constitutes a "serious crime" as defined by Pa.R.D.E. 214(i), and is a per se basis for the imposition of discipline (Pa.R.D.E. 203).

## DISCUSSION

Conviction of a serious crime constitutes a per se basis for the imposition of discipline under the Penn-

sylvania Rules of Disciplinary Enforcement. Pa.R.D.E. 203(b)(1); 214(i). In this case, the board need only determine the appropriate measure of discipline to be imposed.

In a case where discipline is based on a respondent's conviction of a serious crime, it is necessary for the Disciplinary Board to "consider the events which surrounded the criminal charge in order to weigh the impact of the conviction upon the measure of discipline." *Office of Disciplinary Counsel v. Eilberg,* 497 Pa. 388, 441 A.2d 1193 (1982); *Office of Disciplinary Counsel v. Troback,* 477 Pa. 318, 383 A.2d 952 (1978).

Accordingly, in this case we must review the circumstances surrounding the convictions which led to the instant petition for discipline. Although we are in no way condoning respondent's behavior or minimizing the serious nature of his violation of the law, we begin our analysis by noting that the conduct for which respondent is being disciplined—two drunk driving convictions—involved an abrogation of respondent's duties as a citizen, and not the compromise of any client interests. While this fact does not relieve respondent from discipline, it is a relevant point to consider when ascertaining the measure of discipline which will adequately protect the interests of the public and the integrity of the bar. See *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 526 A.2d 1180 (1987).

We must also consider any mitigating factors in determining appropriate discipline for professional misconduct. In Pennsylvania, alcohol abuse may be considered as a mitigating factor; however, alcohol abuse is not a defense to a charge of attorney misconduct. The respondent-attorney must prove, by clear and con-

vincing evidence, that alcohol abuse was a factor in causing his or her misconduct before substance abuse can be considered in mitigation. See *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989); Disciplinary Board Rule 89.293.

In the instant case, respondent introduced substantial evidence of his long-standing battle with alcoholism. Considerable testimony was proffered regarding respondent's chronic alcohol abuse, and the role it played in his drunk driving convictions. We are satisfied that the record supports a finding that respondent suffered from alcoholism and that his infirmity led to the drunk driving convictions which ultimately brought him before this board. Our analysis of the record evidence leads us to the conclusion that the *Braun* "nexus test" has been met, and that we should consider respondent's alcoholism as a mitigating factor when ascertaining the appropriate measure of discipline.

The nature of respondent's offenses, the presence of his alcoholism, and his ongoing rehabilitation from this insidious disease, as well as his past contributions to the field of law and favorable stature within the legal community, combine to make respondent a candidate for probation pursuant to Disciplinary Board Rule 89.292. We therefore recommend that respondent be placed on probation, which we believe will adequately protect the interests of both the public and the bar, and enable respondent to continue to make a positive contribution to the practice of law in this Commonwealth.

## RECOMMENDATION

Based on the foregoing, the Disciplinary Board recommends that respondent, [    ], be suspended from the practice of law for a period of three years, that

the suspension be stayed in its entirety, and that respondent be placed on probation for a period of three years subject to the following conditions:

(1) Respondent shall abstain from using alcohol or any other mind-altering chemical;

(2) Respondent shall regularly attend Alcoholics Anonymous meetings on a weekly basis;

(3) Respondent shall obtain a sponsor in Alcoholics Anonymous and maintain weekly contact with that sponsor;

(4) A sobriety monitor shall be appointed to monitor respondent in accordance with Disciplinary Board Rule 89.293(c);

(5) Respondent shall furnish his sobriety monitor with his Alcoholics Anonymous sponsor's name, address and telephone number;

(6) Respondent shall establish his weekly attendance at Alcoholics Anonymous meetings by providing written verification on a board-approved form to his sobriety monitor;

(7) Respondent shall undergo any counseling, outpatient or in-patient treatment, prescribed by a physician or alcohol counselor;

(8) With the sobriety monitor, respondent shall:

(a) meet at least twice a month;

(b) maintain weekly telephone contact;

(c) provide the necessary properly executed written authorizations to verify his compliance with the required substance abuse treatment; and

(d) cooperate fully.

(9) The appointed sobriety monitor shall:

(a) monitor respondent's compliance with the terms and conditions of the order imposing probation;

(b) assist respondent in arranging any necessary professional or substance-abuse treatment;

(c) meet with respondent at least twice a month, and maintain weekly telephone contact with respondent;

(d) maintain direct monthly contact with the Alcoholics Anonymous sponsor of the respondent;

(e) file with the Secretary of the Board quarterly written reports; and

(f) immediately report to the Secretary of the Board any violations by the respondent of the terms and conditions of the probation.

It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Board Members Hill, Powell, McGivern, Flaherty and Leonard did not participate in the adjudication.

## ORDER

And now, December 13, 1993, upon consideration of the report and recommendations of the Disciplinary Board dated October 18, 1993, it is hereby ordered that [respondent] be, and he is, suspended from the bar of this Commonwealth for a period of three years, that the suspension be stayed in its entirety, and that respondent be placed on probation for a period of three years, subject to the following conditions:

(1) Respondent shall abstain from using alcohol or any other mind-altering chemical;

(2) Respondent shall regularly attend Alcoholics Anonymous meetings on a weekly basis;

(3) Respondent shall obtain a sponsor in Alcoholics Anonymous and maintain weekly contact with that sponsor;

(4) A sobriety monitor shall be appointed to monitor respondent in accordance with Disciplinary Board Rule 89.293(c);

(5) Respondent shall furnish his sobriety monitor with his Alcoholics Anonymous sponsor's name, address and telephone number;

(6) Respondent shall establish his weekly attendance at Alcoholics Anonymous meetings by providing written verification on a board-approved form to his sobriety monitor;

(7) Respondent shall undergo any counseling, out-patient or in-patient treatment, prescribed by a physician or alcohol counselor;

(8) With the sobriety monitor, respondent shall:

(a) meet at least twice a month;

(b) maintain weekly telephone contact;

(c) provide the necessary properly executed written authorizations to verify his compliance with the required substance abuse treatment; and

(d) cooperate fully.

(9) The appointed sobriety monitor shall:

(a) monitor respondent's compliance with the terms and conditions of the order imposing probation;

(b) assist respondent in arranging any necessary professional or substance abuse treatment;

(c) meet with respondent at least twice a month, and maintain weekly telephone contact with respondent;

(d) maintain direct monthly contact with the Alcoholics Anonymous sponsor of the respondent;

(e) file with the Secretary of the Board quarterly written reports; and

(f) immediately report to the Secretary of the Board any violations by the respondent of the terms and conditions of the probation.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.