# In re Anonymous No. 76 D.B. 92

Disciplinary Board Docket no. 76 D.B. 92.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

LEONARD, *Member*, October 4, 1994—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

Respondent was suspended from the practice of law in the Commonwealth of Pennsylvania by Supreme Court order dated August 12, 1992, pursuant to Rule 214(d), Pa.R.D.E. Respondent's suspension resulted from his May 31, 1991 judgment of conviction in federal court on all counts of a four-count indictment: making a false statement as to material facts in a matter within the jurisdiction of the United States Department of Justice, in violation of 18 U.S.C. §1001; making a false oral statement as to material facts in a matter within the jurisdiction of the United States Department of Justice, in violation of 18 U.S.C. §1001; conspiracy to possess cocaine, in violation of 21 U.S.C. §846; and, possession of cocaine in violation of 21 U.S.C. §844.

Respondent was sentenced to a term of imprisonment of 16 months. After sentence was imposed, respondent appealed to the United States Court of Appeals for the Third Circuit which affirmed the judgment of conviction but vacated the sentence and remanded to the district court for resentencing. Respondent was resentenced to an identical 16 month term and fined $10,000—later modified to eight months imprisonment and eight months home confinement.

On March 11, 1993, the Office of Disciplinary Counsel filed a petition for discipline against respondent based on his May 1991 conviction. Respondent filed a timely answer on March 24, 1993.

The matter was referred to Hearing Committee [   ] chaired by [   ], Esquire and included [   ], Esquire and [   ], Esquire.

The committee held a hearing on October 22, 1993 and recommended that respondent be suspended from the practice of law for a period of three years, retroactive to the date of temporary suspension, August 12, 1992. Neither party filed exceptions.

The matter was referred to the Disciplinary Board and adjudicated on June 22, 1994.

## II. FINDINGS OF FACT

The board adopts the findings of fact made by the Hearing Committee which were based upon the stipulations presented by petitioner and respondent:

(1) Petitioner, whose principal office is located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207, Pa.R.D.E., with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) The respondent, [   ], was born on June 4, 1943, and was admitted to practice law, in the Commonwealth of Pennsylvania on October 5, 1970. He resides at [   ].

(3) From 1984 until 1986, respondent was [A] to the [B].

(4) On various occasions between December 1984 and January 1988, respondent possessed and used cocaine in violation of 21 U.S.C. §844(a).

(5) Respondent was never addicted to cocaine. He used the drug in the company of friends and acquaintances in social situations.

(6) From September 6, 1988, to May 12, 1989, the respondent served as an [C] to [D] in Washington, D.C.

(7) In this position respondent acted as a liaison with law enforcement agencies and carried out general assignments given to him by [D] which related to pending matters within the criminal and intelligence communities.

(8) In this position, respondent had access to sensitive information relating to intelligence and law enforcement areas.

(9) Before assuming his duties as [C] respondent completed Standard Form 171, entitled "Application for Federal Employment."

(10) This form included questions regarding prior criminal convictions but does not address any uncharged or unadjudicated criminal conduct.

(11) In addition, persons appointed to sensitive positions in the [E] are usually required to complete Standard Form 86 prior to taking the position. This form includes specific questions concerning the applicant's drug use and offers a warning to the applicant that failure to provide truthful answers could result in criminal prosecution.

(12) Respondent completed the SF-86 form six days after entering on duty as [C] to [D]. In response to the question, "Do you now use or supply, or in the last five years, have you used or supplied marijuana, cocaine, narcotics, hallucinogenic, or other dangerous

or illegal drugs?," respondent typed an "X" beneath the word "No." Respondent signed the SF-86, certifying that his answers were true.

(13) On November 1, 1988, respondent was interviewed by a special agent of the Federal Bureau of Investigation. The special agent reviewed the questions on the SF-86, and specifically asked respondent if he had ever used illegal drugs. Respondent stated that he had not.

(14) The security officer of [D's] office relied upon respondent's statements on the SF-86 to grant him a temporary security clearance, and on respondent's statement to the special agent in granting him a final security clearance.

(15) Respondent resigned his position with [D's] office on April 27, 1989, effective May 12, 1989.

(16) On August 10, 1990, a grand jury of the United States District Court for the [    ] District of Pennsylvania issued a four-count indictment against the respondent charging him with violations of:

(a) Count I: Making a false written statement as to material facts in a matter within the jurisdiction of the United States Department of Justice, in violation of 18 U.S.C. §1001, regarding respondent's false statement in his answer on the SF-86 form. The date of this alleged statement was September 12, 1988.

(b) Count II: Making a false oral statement as to material facts in a matter within the jurisdiction of the United States Department of Justice, in violation of 18 U.S.C. §1001, regarding respondent's false statement to the special agent of the Federal Bureau of Investigation. The date of this alleged statement was November 1, 1988.

(c) Count III: 21 U.S.C. §844(a), regarding respondent's combination with others to possess cocaine, between December 1984 and January 1988.

(d) Count IV: 21 U.S.C. §846, regarding respondent's possession and use of cocaine, alleged to have occurred on April 8, 1989.

(17) The charges against respondent were docketed to no. [    ] in the United States District Court for the [    ] District of Pennsylvania.

(18) Respondent pleaded not guilty to all charges and the matter went to trial beginning February 4, 1991, and ending February 7, 1991.

(19) Respondent went to trial on advice of counsel to preserve legal issues for appeal and not to contest factual guilt.

(20) At respondent's trial, [D] testified that if he had known about respondent's drug use, he would not have made respondent part of his staff.

(21) [D] also testified at respondent's trial that respondent was an "excellent lawyer who always fulfilled the responsibilities that were given to him."

(22) [F], counsel for [E] testified at respondent's trial concerning the involvement of respondent in reviewing foreign intelligence security matters for [D]. [F] testified that she had no reason to believe that respondent had ever improperly disclosed any information he received. She further testified that while respondent served at the [E] that she enjoyed a "fine professional relationship" with him and that respondent handled his responsibilities in a "very professional, very cordial" manner.

(23) On February 7, 1991, the jury in respondent's trial returned a verdict of guilty as to all counts.

(24) On May 31, 1991, the Honorable [G], United States District Judge, entered a judgment of conviction and sentenced respondent to imprisonment for terms of 16 months each as to Counts I and II and 12 months each as to Counts III and IV, all concurrent, for a total sentence of imprisonment for 16 months.

(25) The sentencing court, as well as the probation office, found no evidence that respondent had in any way abused or otherwise compromised the responsibilities of his office.

(26) The sentencing court found that respondent's high-ranking position in the [E] was an aggravating factor for sentencing purposes.

(27) On June 6, 1991, respondent filed a notice of appeal to the United States Court of Appeals for the Third Circuit.

(28) Respondent resigned from his law firm on March 22, 1990 and has not practiced law since that time.

(29) On May 15, 1992, the United States Court of Appeals entered a decision affirming the respondent's judgment of conviction. The Court of Appeals determined that respondent's sentence should be vacated, however, and remanded the matter to the district court for resentencing.

(30) On January 8, 1993, respondent appeared before the United States District Court for sentencing and was sentenced to a total of 16 months imprisonment and a fine of $10,000.

(31) On January 15, 1993, the United States District Court modified respondent's sentence of imprisonment to eight months imprisonment and eight months home confinement.

## III. CONCLUSIONS OF LAW

Respondent's conviction represents an independent basis for the imposition of discipline under Rule 203(b)(1), Pa.R.D.E.

By his conduct which resulted in convictions on Counts I and II of the indictment, relating to false statements in the course of his background investigation, respondent violated the following Rules of Professional Conduct:

(a) R.P.C. 8.4(b), which provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects.

(b) R.P.C. 8.4(c), which provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(c) R.P.C. 8.4(d), which provides that it is professional misconduct for a lawyer to engage in conduct prejudicial to the administration of justice.

By his conduct which resulted in conviction on Count III of the indictment, relating to conspiracy to possess cocaine, respondent violated the following Disciplinary Rules of the Code of Professional Responsibility, in effect prior to April 1, 1988:

(a) D.R. 1-102(A)(3), which prohibits a lawyer from engaging in illegal conduct involving moral turpitude;

(b) D.R. 1-102(A)(5), which prohibits a lawyer from engaging in conduct prejudicial to the administration of justice; and

(c) D.R. 1-102(A)(6), which prohibits a lawyer from engaging in conduct adversely reflecting on fitness to practice law.

By his conduct which resulted in conviction on Count IV of the indictment, relating to possession of cocaine, respondent violated the following Rules of Professional Conduct:

(a) R.P.C. 8.4(b), which provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects.

(b) R.P.C. 8.4(d), which provides that is professional misconduct for a lawyer to engage in conduct prejudicial to the administration of justice.

## IV. DISCUSSION

Because the parties have stipulated to the facts relative to criminal convictions and the resulting infractions of the Disciplinary Rules, this matter, like many before the board, implicates only the extent of discipline to be imposed. The issue of the sanction warranted as a result of a criminal conviction is adjudicated on a case-by-case basis and the discipline is tailored by the severity of the crime after consideration of aggravating and mitigating circumstances.

The public prominence of the respondent in combination with his narcotics and false statement convictions presents a unique factual backdrop to the question of the appropriate level of discipline. The stipulated facts actually outline three independent grounds for punishment—misconduct by an attorney in a position of public authority, conviction for drug possession and conviction of making false statements to government authorities. However, both Disciplinary Counsel and the Hearing Committee viewed the narcotics convictions as the foundation for the discipline and considered the abuse of public office and the false statement convictions as aggravating building blocks. While we cannot stress

too emphatically the disdain attendant to respondent's lying, not once, but twice, to [E] officials, we will not take issue with the posture of the case as presented by the Disciplinary Counsel.

We turn initially to the impact of respondent's drug possession convictions.

Respondent has admitted to some 12 instances of cocaine use over approximately four years. During this time, respondent spent some time in private practice, held a high position in state government and, as mentioned, served as an [C] to [D]. The disciplinary implications of respondent's cocaine use while serving as a prosecutor and while holding public office are discussed, *infra*.

In *Office of Disciplinary Counsel v. Simon,* 510 Pa. 312, 507 A.2d 1215 (1986), an attorney was disbarred on the basis of two convictions for cocaine distribution. Using sweeping language to describe its intolerance for drug-related attorney offenses, "even minor violations of [the] law ... tend to lessen public confidence ..." *id.* at 319, 507 A.2d at 1219, the Pennsylvania Supreme Court stopped short of announcing a *per se* disbarment rule for drug convictions. The court's pronouncement in *Simon* has nonetheless been cited as the authority for imposition of serious discipline in matters which, prior to *Simon,* may have called for some leniency. Its holding has also not been confined to drug distribution cases. In a recent board decision, *In re Anonymous No. 27 D.B. 90,* 17 D.&C.4th 12 (1992), although a very small amount of cocaine was involved in the possession and persuasive mitigating circumstances may have otherwise indicated private discipline, the board was constrained by *Simon* to recommend a public censure. In doling out its censure, the Supreme Court informed respondent that only his past positive con-

tributions to the legal system saved him from disbarment.

In *In re Anonymous No. 62 D.B. 85,* 49 D.&C.3d 504 (1987) respondent was convicted on five counts of possession of cocaine. The board disputed respondent's characterization of his conduct as private and, citing the impairment to public trust, imposed an 18 month suspension. The Supreme Court disagreed and extended the suspension to five years.

Despite the edict of *Simon,* attorneys involved with drug possession encounter a wide spectrum of disciplinary dispositions. See *e.g., In re Anonymous No. 42 D.B. 87,* 5 D.&C.4th 613 (1987) (attorney testifying as government witness but not charged with drug offense privately reprimanded); *In re Anonymous No. 62 D.B. 85,* 49 D.&C.3d 504 (1987) (five-year suspension based on five-count possession conviction). Some mitigating factors considered in the varying degrees of discipline are: addiction, *In re Anonymous No. 37 D.B. 88,* 50 D.&C.3d 526 (1989); extensive emotional distress, *In re Anonymous No. 100 D.B. 88,* 12 D.&C.4th 60 (1990); and, cooperation with the government, *In re Anonymous No. 124 D.B. 89,* 12 D.&C.4th 417 (1991).

Respondent never sold or distributed cocaine, thus, we are not required to recommend disbarment as *Simon* can possibly be construed to compel. Rather, respondent's case is properly guided by precedent involving drug use by a prosecutor and misconduct by a holder of public office. In both instances, a higher expectation of integrity is imposed and lack of faithfulness to that ethic brings a congruent aggravation of discipline.

We look first to disciplines imposed when the convicted attorney is, has, or will serve as a prosecutor. Instances of drug use involving prosecuting attorneys implicate a further breach of the public trust justifying

for aggravated sanction. In *In re Anonymous No. 60 D.B. 83*, 33 D.&C.3d 187 (1984), the respondent, an assistant district attorney, was a "social user" of cocaine and a fraternizer of drug dealers. The board characterized the respondent's conduct as condoning drug use and recommended a one-year suspension.

In *In re Anonymous No. 3 D.B. 89*, 18 D.&C.4th 490 (1993), the respondent was scheduled to start a position as an assistant district attorney when he was arrested as part of a drug prosecution. The board considered respondent's addiction and severe family problems in mitigation and recommended a five-year suspension. A dissent, however, argued for disbarment because, in part, of respondent's impending employment as a prosecutor, a factor apparently not considered by the majority.

These cases indicate that prosecuting attorneys, specifically entrusted with protection of the public, are deserving of a more severe penalty when this duty is compromised by the attorney's own inability to uphold the law.

Respondent claims that he was not serving as a prosecutor at the time of his cocaine use. For at least the admitted use in 1989, this assertion is simply without merit. Respondent's attempts to classify his [C] duties as administrative in nature do not diminish the fact that in 1989 respondent was the right hand to [D]—[    ]—law enforcement official in the nation. The specifics of respondent's responsibilities are not germane as it is the goal of maintaining the public trust which is of paramount concern. We thus consider respondent's position with [D] as invoking a higher degree of culpability for those offenses, such as the narcotics violations at issue here, which represent an egregious disregard for the laws attorneys are sworn to uphold.

Respondent's drug activity apparently occurred in conjunction with instances of excessive drinking and, in fact, respondent cites to an alcohol problem as a possible cause for his occasional flirtation with cocaine.

Respondent's position as a holder of public office in Pennsylvania, [A] to the [   ] and [   ], also imposed upon him a greater expectation to preserve the high standards of the legal system. *Office of Disciplinary Counsel v. Eilberg,* 497 Pa. 388, 441 A.2d 1193 (1982), instructs that attorneys holding public office are subject to an even higher standard in maintaining "public confidence in the integrity of the legal profession." *Id.* at 395, 441 A.2d at 1197. Eilberg, while a United States Congressman, rendered legal services to clients who had an interest in the outcome of Congressional action. Eilberg was suspended for five years for his conduct which was a violation of a federal conflict of interest statute.

Other instances involving breach of the public trust by attorneys in public office have exacted substantial penalties. In *In re Anonymous No. 72 D.B. 82,* 27 D.&C.3d 243 (1983), when a district attorney approved a criminal complaint which benefited a private client, he was suspended for two years. When, in *In re Anonymous No. 76 D.B. 83,* 47 D.&C.3d 138 (1987), a public defender accepted a gift from an individual represented by him in his official capacity, the Supreme Court ordered a three-year suspension.

As can be seen, misuse of public office is itself grounds for serious discipline. In the instant matter, however, it is clear that respondent's misconduct did not occur in the deployment of his public duties. Thus, we do not view this disregard of the public trust in its harshest light. Rather, we look to respondent's public role, acknowledged by respondent, as imposing an ele-

vated expectation of ethical conduct, a breach of which we consider as an aggravating factor.

The remaining question, which we view as significant, is the degree of aggravation wrought by respondent's convictions for the oral and written false statements provided to the [E] relative to respondent's employment with [D]. We are aware that, in some instances, not factually remote from respondent's case, disbarment has resulted when attorneys issue false statements to authorities. See *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 425 A.2d 730 (1981) (attorney disbared for filing false pleading and false driver's license application); *Office of Disciplinary Counsel v. Wittmaack,* 513 Pa. 609, 522 A.2d 522 (1987) (fabrication of evidence warrants disbarment); and, *Office of Disciplinary Counsel v. Holston,* 533 Pa. 78, 619 A.2d 1054 (1993) (forgery of divorce decree and denial of knowledge of same warrants disbarment).

Although there is no case on point precisely concerning lying to federal officials, if respondent was motivated solely by personal gain in denying his drug use, the disbarment penalty would not be unlikely. Respondent's convictions for these falsifications are totally aberrant to the esteem associated with the legal profession. Certainly respondent would not have passed [E] scrutiny if he answered truthfully. He, therefore, gained his employment by virtue of these false statements. We, nonetheless, accept respondent's explanation that he lied to the [E] to shield his political mentor from embarrassment. We cite this not as approval of a rationale, but only as an indicator that respondent's false statements were not primarily motivated by self-interest. Thus, we acquiesce in the Disciplinary Counsel's and Hearing Committee's consideration of these convictions as aggravating, rather than a distinct basis for discipline.

In mitigation, respondent has offered impressive testimony from his professional colleagues attesting to respondent's high principles and years of dedicated public service, all of which we credit.

We also note that in his years of public service, respondent apparently functioned competently indeed, even with distinction. In this vein, we reference the lack of evidence that respondent's drug use infiltrated his functioning in the work place or that, other than the obvious and damaging breach of public trust, any public harm resulted from his private misconduct.

Respondent did not raise the question of his possible alcoholism in mitigation, nor, without competent medical evidence, do we consider same.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent, [    ], be suspended for a period of three years retroactive to August 12, 1992.

It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Schiller and Paris dissent and would recommend a five year suspension.

Board Members Kerns, Lieber and McGivern did not participate in the adjudication.

## ORDER

And now, December 22, 1994, upon consideration of the report and recommendations of the Disciplinary Board dated October 4, 1994, it is hereby ordered that [respondent] be and he is suspended from the bar of

this Commonwealth for a period of three years, retroactive to August 12, 1992, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Castille did not participate in this matter.

Mr. Justice Papadakos files a dissenting statement.

Mr. Justice Montemuro is sitting by designation.

## DISSENTING STATEMENT

PAPADAKOS, *J.,* December 22, 1994—I am constrained to enter a vigorous dissent to the imposition of a three year suspension imposed by the majority and believe that nothing less than disbarment will restore public confidence in the legal profession and assure the public that high public law enforcement officials are not to be treated specially and viewed as above the law.

Respondent has served in the highest law enforcement agencies in the Commonwealth and in the nation. He has served as [A] to the [B]. He has served as an [C] to [D] in Washington, D.C. He acted as a liaison with law enforcement agencies and carried out general assignments given to him by [D], which related to matters pending within the criminal and intelligence communities. In this position, respondent had access to sensitive information relating to intelligence and law enforcement areas.

In order to qualify for the position of [C] to [D] the respondent falsified his written questionnaire and orally lied to a special agent of the Federal Bureau of Investigation concerning his use of drugs. Based

upon the false statements made, respondent was given a security clearance.

Respondent resigned his position effective May 12, 1989, and on August 10, 1990, a grand jury of the United States District Court for the [    ] District of Pennsylvania issued a four-count indictment against respondent charging him with false written and oral statements and with use and possession alone and with others of cocaine.

Respondent pleaded not guilty to all charges but, after trial by jury, he was found guilty of all charges. His ultimate sentence was six months imprisonment, six months home confinement and a fine of $10,000. The sentencing court found that respondent's high ranking position in [E] was an aggravating factor for sentencing purposes.

The respondent has admitted the use of cocaine over a four year period on at least 12 different occasions. He explains the use during periods when he was under the influence of alcohol and that his illegal drug use was confined to social settings. When confronted by the [E] and the Federal Bureau of Investigation concerning any prior drug use, he answered falsely in writing and orally. He did so out of embarrassment and in an effort to protect his friend and employer, [D], who had asked to join him at the [E] in Washington, D.C. If he wanted to protect [D], all he had to do was to decline the offer of a position in Washington, D.C. It is not difficult to assume that he, in fact, acted out of a desire for personal gain and a sense of personal pride in accepting such a high position on the national scene. I do not view his motives as honorable under the circumstances.

The respondent is guilty of professional misconduct in committing a criminal act that reflected adversely on his honesty, trustworthiness and fitness as a lawyer.

The respondent is guilty of professional misconduct in engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

The respondent is guilty of professional misconduct by engaging in conduct which is prejudicial to the administration of justice.

The respondent has engaged in illegal conduct involving moral turpitude.

The respondent has engaged in conduct adversely reflecting on his fitness to practice law.

The respondent has knowingly, willfully, and cavalierly violated the federal laws he was duty bound to uphold, that is, possession of cocaine, alone and with others, and possession and use of cocaine.

Certainly, the respondent was held to be an exceptional lawyer who always fulfilled his responsibilities in a proper manner. He enjoyed a fine professional relationship with co-workers and subordinates. It is indeed unfortunate that a person with the reputation of this respondent should be so weak in controlling himself that he must be disciplined. His weakness is also shown in his inability, from the outset, to exercise his authority and fulfill his duty, to stop his friends and associates from using illegal drugs in his presence and company. There is absolutely no excuse for his criminal conduct.

The legal community is always under attack by the public and it is difficult for us, as a profession, to maintain a high standing with the public whom we serve. It is the very nature of our profession that engenders a love-hate relationship with the public. For this reason, we cannot afford to be viewed as coddling errant lawyers who happen to be in high public office but who, nevertheless, fall short of the standards required of them.

The public prominence of the respondent, in combination with his illicit use of narcotics (and in permitting others to use narcotics illegally in his presence and with his consent), and his false statement convictions demands that he be disbarred. Above all others in the legal profession, the respondent, as a top prosecutor in the state and federal fields, must be held to the highest standard of fidelity, honesty and trustworthiness. It has often been said that the higher they are, the harder they fall.

For the foregoing reasons, I dissent to the three year suspension imposed by the majority and I would issue a rule upon the respondent to show cause why he should not be disbarred. Anything less sends a wrong message to the public and the members of our bar.