**Office of Disciplinary Counsel v. Obod**

Disciplinary Board Docket, no. 37 D.B. 2001.

HALPERN, *Member,* November 21, 2002—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

By order dated March 19, 2001, the Supreme Court of Pennsylvania temporarily suspended Ramon R. Obod, respondent, from the practice of law. This suspension was the result of a guilty plea in the United States District Court for the Eastern District of Pennsylvania to the crime of false statements pursuant to 18 U.S.C. §1001. Office of Disciplinary Counsel, petitioner, filed a petition for discipline against respondent on April 10, 2001. Respondent filed an answer to petition for discipline on June 4, 2001.

A disciplinary hearing was held on October 3, 2001, before Hearing Committee 1.20 comprised of Chair Brian E. Quinn, Esquire, and Members Leigh Michael Skipper, Esquire, and Kelley A. Grady, Esquire. James C. Schwartzman, Esquire, represented respondent. Raymond S. Wierciszewski, Esquire, represented petitioner. A joint stipulation of fact and law was admitted as part of the record. Respondent testified on his own behalf and presented six witnesses.

After briefing by the parties, the Hearing Committee filed a report on April 24, 2002, and recommended that respondent be suspended from the practice of law for a period of one year retroactive to March 19, 2001.

Respondent filed a brief on exceptions on May 9, 2002. Petitioner filed a brief opposing exceptions on May 20, 2002.

This matter was adjudicated by the Disciplinary Board at the meeting of June 12, 2002.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office was located at Suite 3710, One Oxford Centre, Pittsburgh, Pennsylvania, is vested pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of any attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of said Rules of Disciplinary Enforcement.

(2) Respondent was born in 1934 and was admitted to practice law in Pennsylvania in 1959. His last registered address for the practice of law was 2000 Market Street,

10th Floor, Philadelphia, PA 19103. Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Respondent has not practiced law since July 2000, when, after resigning from his law partnership with Fox, Rothschild, and arranging for his clients to be transferred to other attorneys, he voluntarily ceased the practice of law.

(4) On July 7, 2000, the United States Attorney for the Eastern District of Pennsylvania filed in the United States District Court for the Eastern District of Pennsylvania an information under criminal number 00-CR396-1, charging respondent with one count of false statement.

(5) On July 27, 2000, respondent pleaded guilty to the information which charged one count of making a false statement pursuant to 18 U.S.C. §1001.

(6) On October 12, 2000, Judge J. Curtis Joyner sentenced respondent to probation for a period of 18 months, 500 hours of community service, a $5,000 fine, and a $100 special assessment. Respondent's probation was terminated by order of the court on January 25, 2002.

(7) By order of March 19, 2001, the Supreme Court of Pennsylvania temporarily suspended respondent and referred this matter to the Disciplinary Board.

(8) In 1996, by virtue of his representation of American Travelers Corporation, respondent learned that Conseco Inc. was negotiating to purchase Transport Holdings Inc. Respondent relied on that information to purchase 500 shares of Transport stock prior to the public announcement that Transport was to be acquired by Conseco, which had previously announced the proposed acquisition of Travelers. Respondent's later sale of the Transport stock netted respondent a pre-tax profit of $9,400 and a post-tax profit of $5,000.

(9) When the Securities and Exchange Commission questioned respondent concerning his transactions, respondent gave a materially false statement by failing to disclose the fact that he had been provided information by a representative of Travelers who had personal knowledge of ongoing negotiations for the acquisition of Transport.

(10) At the time respondent spoke to the SEC investigator about his purchase of the Transport stock, he knew that his failure to disclose all of the details of the purchase was wrong and that he had made a terrible mistake.

(11) Respondent subsequently retained counsel who contacted the SEC in an effort to rectify the situation.

(12) After receiving a letter of inquiry from the SEC, respondent advised the managing partner of his law firm of the situation, who then informed the firm's management committee.

(13) In May of 1999, the SEC and respondent entered into a consent decree to avoid the possibility of any civil action.

(14) In June of 2000, respondent entered into an agreement with Fox, Rothschild wherein he resigned from his partnership on June 30, 2000. On July 14, 2000, respondent sent letters to all of his clients informing them that he had resigned and was no longer engaged in the practice of law.

(15) Respondent has not engaged in the practice of law and has had no direct contact with clients since on or before July 31, 2000. He has performed limited non-legal consulting work for two clients and advised them of his status as a non-lawyer.

(16) Respondent has practiced law since 1959. He concentrated in the areas of business and corporate law.

(17) During his career of over 40 years, prior to his temporary suspension, respondent was a highly respected member of the legal and non-legal communities as evidenced by the numerous character letters submitted and testimony received. A total of 46 character letters were admitted into evidence.

(18) Over the years, respondent has participated in many civic and charitable activities. He has been involved as a member of the board of directors of the Jewish Exponent, the Philadelphia Geriatric Center, the Philadelphia Child Guidance Center and the International House of Philadelphia.

(19) Respondent has no prior record of discipline.

(20) Respondent displayed sincere remorse for his misconduct.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Disciplinary Enforcement and Rules of Professional Conduct:

(1) Pa.R.D.E. 203(b)(1)—Conviction of a crime, which under Enforcement Rule 214 may result in suspension, shall be grounds for discipline.

(2) R.P.C. 8.4(b)—It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

(3) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

## IV. DISCUSSION

This matter is before the Disciplinary Board upon a petition for discipline charging respondent with violation of the Rules of Disciplinary Enforcement based on his conviction of one count of false statements.

When a disciplinary proceeding is commenced against an attorney based upon a criminal conviction, the board's sole responsibility is to determine the appropriate measure of discipline relative to the seriousness of the crime. *Office of Disciplinary Counsel v. Eilberg,* 497 Pa. 388, 441 A.2d 1193 (1982). All aggravating and mitigating circumstances must be taken into consideration in the board's final analysis of discipline. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983).

The facts of this matter are clear that respondent used his knowledge of the potential purchase of Transport by Conseco to his own pecuniary advantage. He was familiar with the applicable SEC laws and regulations and had devoted the large part of his 42 years of law practice to a business law concentration. Respondent was aware at the time he bought the stock that it was going to be an "iffy occurrence," and he knew that it "would not pass the smell test." He knew that it did not look right. Unfortunately, when questioned by the SEC regarding the transaction, respondent failed to disclose that a representative in a position to know this information had informed him of Conseco's acquisition of Transport. In so doing, respondent behaved in a manner contrary to the ethical roles of the legal profession.

After reviewing petitioner's disciplinary recommendation of a suspension for not less than two years and

respondent's recommendation of a suspension for not more than one year, the Hearing Committee recommended a suspension for a period of one year retroactive to the temporary suspension imposed on March 19, 2001. In addition to its analysis of prior disciplinary case law, the committee considered that respondent was an attorney for 42 years with an unblemished record of discipline. His conviction was the result of a single isolated statement, which was not premeditated. Respondent was not involved in an ongoing scheme or pattern of misconduct. Respondent disgorged all profits he earned on the transaction and paid a fine. He completed his court-imposed 500 hours of community service. Respondent took it upon himself to cease the practice of law and to notify his clients of such cessation. By all accounts, respondent enjoyed a reputation as an outstanding member of the legal and civic community. He suffered much shame as a result of his betrayal of those who held him in such high regard. Respondent demonstrated sincere remorse. These factors were highly persuasive to the Hearing Committee, resulting in its recommendation of a suspension of one year.

The board's de novo review of the record leads to the conclusion that a suspension of one year retroactive to March 19, 2001, is appropriate. All of the factors considered by the committee as listed above are legitimate mitigating factors worthy of attention in the final analysis of discipline. Respondent's impressive character testimony combined with his long and distinguished career convinces the board that he will not engage in misconduct in the future, nor should he be required to petition for reinstatement to demonstrate his fitness.

The board recommends a suspension for one year retroactive to March 19, 2001.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Ramon R. Obod, be suspended from the practice of law for a period of one year retroactive to March 19, 2001.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Members Schultz and McLaughlin did not participate in the June 12, 2002 adjudication.

## ORDER

And now, January 31, 2003, upon consideration of the report and recommendations of the Disciplinary Board dated November 21, 2002, it is hereby ordered that Ramon R. Obod be and he is suspended from the bar of this Commonwealth for a period of one year, retroactive to March 19, 2001, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Nigro dissents and would suspend respondent for a period of two years.

## ORDER

And now, February 27, 2003, on certification by the Disciplinary Board that the respondent, Ramon R. Obod, who was suspended by order of this court dated January

31, 2003, for a period of one year retroactive to March 19, 2001, has filed a verified statement showing compliance with all the terms and conditions of the order of suspension and Rule 217, Pa.R.D.E., and there being no other outstanding order of suspension or disbarment, Ramon R. Obod is hereby reinstated to active status, effective immediately.